## Salem

### NANCY JANE DUDLEY MAXWELL PUGH HALL (SMITH)

v.

### COMMONWEALTH OF VIRGINIA

No. 0380-88-3

Decided August 15, 1989

COUNSEL

Thomas L. Phillips, Jr. (Phillips, Phillips & Phillips on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a trial by jury, Nancy Jane Dudley Maxwell Pugh Hall (Smith) was convicted of first degree murder and sentenced to twenty-five years imprisonment. Smith raises three issues in this appeal: (1) whether she was denied due process of law and the right to call for evidence in her favor pursuant to Article I, section 8 of the Virginia Constitution; (2) whether the trial court erred by denying her motion to strike the evidence at the conclusion of all the evidence; and (3) whether the trial court erred by denying her motion to set aside the jury verdict. Finding no error, we affirm.

Donald Wayne Pugh was shot and killed on October 31, 1970, while riding in a car being operated by his wife, appellant, on the Lynchburg Expressway. Authorities questioned Smith following the shooting, and she gave conflicting statements of how the incident occurred. Smith first stated that a car pulled up alongside hers and one of the occupants began shooting. Smith later told investigators that she was traveling southbound approaching the Grace Street Bridge when a man on top of the bridge fired at the car. Although Pugh was shot nine times, damage to the vehicle was limited to the front passenger window, which was completely destroyed. Further, no spent cartridges were found at the bridge, nor were any glass fragments found on the road where Smith said the shooting occurred. Despite the investigation which followed the incident, no arrests were made and the case was closed. Susan Sowell, a friend of Smith's, was questioned by investigators during the initial investigation but denied having any knowledge of the incident. Sowell testified that she was interviewed a second time two years after the shooting. The interview took place at the juvenile detention home where Sowell was residing. Sowell stated that the officers recorded her statement implicating Smith in Pugh's murder. Still, no arrests were made. In August, 1983, the case was re-opened, and in September, 1983, a grand jury handed down an indictment charging Smith with the murder of Pugh. Smith was tried and convicted in December, 1984. This conviction was reversed and the case was remanded by the Virginia Supreme Court on the ground that the trial court erred by failing to give a cautionary instruction to the jury that the prior inconsistent statements of a witness were admitted for the limited purpose of impeachment. *See Hall v. Commonwealth*, 233 Va. 369, 355 S.E.2d 591 (1987). Smith was retried and convicted by jury in February, 1988. It is from this conviction that she appeals.

In her first assignment of error, Smith argues that due to a thirteen year pre-indictment delay she was denied due process of law and the right to call for evidence in her favor. Specifically, Smith argues that certain evidence that would have aided her defense was lost, destroyed or misplaced, and that witnesses' memories were diminished during the period of the delay.

Initially, we note that because this is a pre-indictment delay as opposed to a post-indictment delay, "the Speedy Trial Clause of the Sixth Amendment . . . is wholly irrelevant. . . ."

*United States v. Lovasco*, 431 U.S. 783, 788 (1977). In cases of pre-indictment delay, the issue is whether the accused was denied due process as a result of the delay. However, the "Due Process Clause has [only] a limited role to play in protecting against oppressive delay [pre-indictment]." *Id.* at 789. "[T]he due process clause may provide a criminal defendant with some protection against overly stale claims if the defendant can establish that (1) the prosecutor intentionally delayed indicting him to gain a tactical advantage *and* (2) the defendant incurred actual prejudice as a result of the delay." *United States v. Amuny*, 767 F.2d 1113, 1119 (5th Cir. 1985) (emphasis in the original). Thus, although "proof of prejudice is generally a necessary . . . element of a due process claim, . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco*, 431 U.S. at 790.

Admittedly, there was a substantial delay in bringing Smith to trial. However, a due process violation cannot be established solely on the basis of the passage of a substantial period of time. There is no evidence that the Commonwealth improperly delayed the indictment to gain a tactical advantage over Smith or that it acted in bad faith. Likewise Smith has not demonstrated that she suffered any actual prejudice as a result of the delay. Smith merely argues that she was prejudiced due to the diminished memories of the witnesses and because certain evidence was lost, destroyed or misplaced. However, the Commonwealth had the burden of proving Smith's guilt beyond a reasonable doubt, and it also suffered equally from the flagging memories of the witnesses. Admittedly, certain evidence was lost, misplaced or destroyed, including Sowell's alleged taped statement, the juvenile detention home records and visitors' log, the investigating officers' notes and reports, the clothes worn by Pugh on the night of the shooting, the bullets removed from Pugh, and the hospital records. However, Smith has failed to demonstrate how any of this evidence would have aided in her defense. Therefore, we find that Smith was not denied due process or the right to call for evidence in her favor.

Smith next argues that the trial court erred by denying her motion to strike at the conclusion of all the evidence. Throughout the trial the Commonwealth argued that Smith was a principal in the second degree, and that James Ward, with whom Smith was engaged in an extramarital relationship, did the actual shooting.

Therefore, in order to prove that she acted as a principal in the second degree, Smith argues that the Commonwealth had to prove beyond a reasonable doubt that Ward was the principal in the first degree. Smith contends that the Commonwealth's evidence was not sufficient to prove Ward was the principal in the first degree, and, therefore, that Smith was a principal in the second degree.

"A principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." *Jones v. Commonwealth*, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967). As Smith correctly points out, "[i]t was incumbent upon the Commonwealth, in proving her case against [Smith] as an aider and abettor, to establish the commission of the substantive offense by [Ward], the principal." *Snyder v. Commonwealth*, 202 Va. 1009, 1015, 121 S.E.2d 452, 456-57 (1961).

Susan Sowell testified that Smith was unhappy in her marriage to Pugh and wanted to kill him to collect the proceeds from his insurance policy. Sowell stated that Smith planned to get Pugh drunk, drive him around town before stopping to allow Ward to shoot Pugh. After Pugh's murder, Sowell testified that she saw Smith, and Smith conveyed to her "that everything happened just like we had planned it to happen."

The weight and credibility accorded to Sowell's testimony was a factual matter for the jury to resolve. *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986). "However, whether [the jury's finding] is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law." *Id.* at 528, 351 S.E.2d at 601. We are satisfied that, viewed in the light most favorable to the Commonwealth, *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the evidence was sufficient for the jury to find that Ward shot Pugh and that Smith was a principal in the second degree. Therefore, the trial court did not err by denying Smith's motion to strike.

Finally, Smith argues that the trial court erred by denying her motion to set aside the verdict because her alleged extrajudicial statement to Susan Sowell that she aided Ward in committing the murder was insufficient as a matter of law to establish proof of the corpus delicti of aiding and abetting since the statement was un-

corroborated. We disagree and find that the evidence in this case was sufficient to prove the corpus delicti of aiding and abetting.

■ Where "the commission of the crime has been fully confessed by the accused, only slight corroborative evidence is necessary to establish the corpus delicti." *Clozza v. Commonwealth*, 228 Va. 124, 133, 321 S.E.2d 273, 279 (1984), *cert. denied*, 469 U.S. 1230 (1985). Although Pugh was shot nine times, there were no bullet holes in the vehicle. Only the front passenger window was damaged. Therefore, the bullets necessarily entered through the passenger side window. This evidence corroborated Smith's statement to Sowell that she pulled the car to the side of the road to allow Ward to shoot Pugh. This evidence, together with Sowell's testimony that Smith discussed killing her husband on several occasions and Smith's conflicting accounts of how the incident occurred, was sufficient to establish the corpus delicti of aiding and abetting.

For the foregoing reasons, the decision appealed from is affirmed.

*Affirmed.*

Cole, J., and Keenan, J., concurred.