COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Annunziata and Overton
Argued at Norfolk, Virginia

BENJAMIN PERRY GORDON, III

v.   Record No. 1087-96-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROSEMARIE ANNUNZIATA
MAY 13, 1997

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Thomas S. Shadrick, Judge

Lynndolyn T. Mitchell, Assistant Public
Defender, for appellant.

Michael T. Judge, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.

Following a jury trial, appellant, Benjamin Perry Gordon, III, was convicted of three counts of aggravated sexual battery in violation of Code § 18.2-67.3. On appeal, he contends his constitutional right to speedy trial was violated and that the evidence was insufficient to support his convictions. We disagree and affirm.

## I. CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

Three arrest warrants were issued in September 1992, charging that appellant committed acts of aggravated sexual battery against the four-year-old daughter of R.J.N. and a five-year-old neighbor boy. The crimes allegedly occurred during the period February 1, 1990 through April 30, 1990, at R.J.N.'s

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

home in Virginia Beach, in which appellant then resided.

When the warrants were issued, appellant was incarcerated in Ohio awaiting trial; following trial appellant was sentenced to serve one hundred thirty-five years. The Virginia warrants remained unexecuted until August 1995, when the Commonwealth first sought to extradite appellant. Only then did appellant learn of the Virginia warrants; he waived extradition and was returned to Virginia.

In September 1995, appellant filed a motion in the juvenile and domestic relations district court, praying that the warrants be dismissed on the ground that the delay in their execution violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. The motion was denied. Appellant was indicted for the felony offenses in November 1995, and he reasserted his constitutional claim in a motion to dismiss filed in circuit court in December 1995. In a supplementing memorandum, appellant argued that the delay had violated his Sixth Amendment right to speedy trial.

At the hearing on that motion, appellant argued that the delay had impinged his ability to prepare his defense. Specifically, appellant testified he had been unable to locate three material witnesses. He asserted that Jeanette Thomas would testify that appellant lived with her during the relevant time period, February 1990 through April 1990, and that Kurt and Brenda Bridges could testify that R.J.N. sought revenge against

appellant for money he had borrowed from her.  Appellant further asserted he had difficulty remembering events in 1990.  The trial court denied the motion to dismiss, stating that, "proving only a possibility of prejudice is not sufficient to support a speedy trial violation; and I think that's all we have here."

Appellant's predominant contention on appeal is that the trial court erred in requiring him to prove actual prejudice to establish a Sixth Amendment speedy trial violation.  See Doggett v. United States, 505 U.S. 647, 654-58 (1992) (addressing proof required to establish prejudice prong of Barker v. Wingo, 407 U.S. 514 (1972), balancing test).  Appellant's reliance on Sixth Amendment jurisprudence to support his contention overlooks an important aspect of this case: appellant's complaint does not fall within the Sixth Amendment right to speedy trial.  See United States v. Marion, 404 U.S. 307, 320 (1971); United States v. Lovasco, 431 U.S. 783, 788-89 (1977); Holiday v. Commonwealth, 3 Va. App. 612, 616, 352 S.E.2d 362, 364 (1989); Fowlkes v. Commonwealth, 218 Va. 763, 766, 240 S.E.2d 662, 664 (1978).

Appellant argues that the delay resulting from the Commonwealth's failure to execute the arrest warrants violated his right to speedy trial under the Sixth Amendment.  However, "[a]s far as the Speedy Trial Clause of the Sixth Amendment is concerned, [preindictment] delay is wholly irrelevant . . . only `a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . .

engage the particular protections' of that provision." <u>Lovasco</u>, 431 U.S. at 788-89. <u>See also</u> <u>Fowlkes</u>, 218 Va. at 766, 240 S.E.2d at 664 ("a suspect becomes `accused' within the intendment of the Sixth Amendment when he is placed under arrest"); <u>Holiday</u>, 3 Va. App. at 616, 352 S.E.2d at 364 (same). We find that none of the purposes of the speedy trial guarantee would be met by ordering the dismissal of the indictments against appellant simply because the Commonwealth delayed the execution of arrest warrants against appellant who, serving time for multiple life sentences in a sister state, knew nothing of the warrants until they were executed. <u>See</u> <u>Marion</u>, 404 U.S. at 320. In short, appellant was not "accused" within the meaning of the Sixth Amendment until the warrants were executed.

Appellant's proper avenue for relief from the pre-arrest delay is the due process claim he alleged in his motion to dismiss but failed to pursue either at trial or on appeal. <u>See</u> <u>Lovasco</u>, 431 U.S. at 789; <u>Hall v. Commonwealth</u>, 8 Va. App. 526, 529, 383 S.E.2d 18, 20 (1989). Assuming without deciding that appellant's due process claim is not procedurally defaulted, that claim is without merit because it is clear appellant suffered no actual prejudice from the delay. <u>See</u> <u>id.</u> Appellant first asserted that his witness, Thomas, could not be found. He stated that Thomas would testify that he lived with her during the relevant time period. To the contrary, Thomas was found and testified that appellant did not live with her at that time.

Moreover, appellant admitted that he lived with R.J.N. at the time the crimes were alleged to have been committed. Appellant also acknowledged that he had made no effort to locate the Bridges, nor had he provided his attorney with any pertinent information to facilitate locating them. Furthermore, even assuming to be true appellant's proffer that the Bridges would testify that R.J.N. sought revenge against appellant because he owed her money, such testimony is immaterial to appellant's defense: R.J.N. was not the complaining witness, nor was she an eyewitness to the crimes alleged. Indeed, even assuming such testimony would fully discredit R.J.N.'s testimony at trial, that testimony was not an integral or even important part of the Commonwealth's case. Instead, it merely corroborated relatively insignificant aspects of the testimony of the two complaining witnesses.

## II. SUFFICIENCY

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence in a light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its own judgment for that of the trier of fact. Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). The jury's verdict will not be set aside unless it appears that it is plainly wrong or without

supporting evidence.  Code § 8.01-680; <u>Traverso v. Commonwealth</u>, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).  "It is fundamental that `the credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'" <u>Collins v. Commonwealth</u>, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting <u>Schneider v. Commonwealth</u>, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)).

Code § 18.2-67.3(A)(1) provides that "[a]n accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and . . . [that person] is less than thirteen years of age."

> "Sexual Abuse" means an act committed with the intent to sexually molest, arouse, or gratify any person, where:
> a.  The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;
> b.  The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or
> c.  The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

Code § 18.2-67.10(6).

We find sufficient evidence to support appellant's convictions.  S.N. testified that appellant used to live in the residence she shared with her mother, R.J.N.  D.B., a neighbor boy, was S.N.'s best friend.  D.B. used to come to S.N.'s house

when only S.N. and appellant were home. Appellant would force S.N. to lie on top of D.B. on the living room couch and "hump" him. To S.N., "humping" meant "sex"; she stated she would be moving her body against D.B. Sometimes when these acts occurred, S.N. and D.B. would be dressed; other times they would be naked. Sometimes S.N. would be on top of D.B., and other times their positions were reversed. Appellant also touched S.N.'s vagina when she was naked, and S.N. touched appellant's penis when he was naked; S.N. also touched D.B.'s penis. S.N. also stated that appellant penetrated her with a spoon. Appellant told S.N. and D.B. that if they told anyone about these events, he would kill S.N.'s mother and D.B.'s dog, mother and father. S.N. was four years old; D.B. was five.

D.B. testified that he used to go to S.N.'s house when his mother went to work. Appellant would be there with the children. Appellant forced S.N. to lie on top of D.B. in the living room and "go up and down." Sometimes the children would be dressed; other times they would be naked. Appellant forced S.N. to touch D.B. on the penis with her hand and lips and place his penis in her mouth. D.B. testified that while hiding from appellant in an upstairs room he looked through a hole in the floor to see appellant touch S.N.'s vagina and put his penis in S.N.'s mouth. D.B. testified that sometimes when he witnessed these events, S.N. and appellant were dressed, and other times they were naked. Appellant told the children that if they did not comply he would

- 7 -

kill S.N.'s mother or D.B.'s dog. The children first reported the abuse in 1992 when R.J.N. caught them in a closet doing what appellant had "taught them."

R.J.N. and R.B., D.B.'s father, also testified. R.J.N. testified that appellant lived with her and her daughter during the relevant time period. She testified that D.B.'s mother would bring D.B. to her house and that the children were left in appellant's care while the victims' mothers went to work. R.J.N. confirmed that in 1992 she found S.N. and D.B. in the closet, acting like they were having sex. She further confirmed the existence of a hole in the floor of the second story of the residence. R.B. testified that his wife left D.B. at R.J.N.'s home during the relevant time period. He further testified that he spoke with the children in 1992 after they had been discovered in the closet and that they gave consistent accounts of the alleged incidents. Contrary to appellant's complaints, the absence of physical evidence to corroborate the children's accounts and their delay in reporting the incidents do not contradict the Commonwealth's evidence, but merely address the weight of it.

The decision of the trial court is accordingly affirmed.

Affirmed.
