COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Kelsey and Senior Judge Willis
Argued at Chesapeake, Virginia


CATHERINE PALMER

                                        MEMORANDUM OPINION* BY
v.    Record No. 3265-01-1            JUDGE JERE M. H. WILLIS, JR.
                                            APRIL 22, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                        Randolph T. West, Judge

            Willard M. Robinson, Jr. (Law Offices of
            Willard M. Robinson, Jr., on brief), for
            appellant.

            Leah A. Darron, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     On appeal from her bench trial conviction of abuse and

neglect of a child in violation of Code § 18.2-371.1(A),[1]

Catherine Palmer contends that the trial court erred in admitting

into evidence a copy of an order of the Newport News Circuit Court

convicting Lorenzo Brown of second-degree murder.  She argues that

admission of that order violated her Sixth Amendment right to

confront the witnesses against her and that the order was

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

        [1] Code § 18.2-371.1(A) provides in pertinent part that
"[a]ny parent, guardian, or other person responsible for the
care of a child under the age of eighteen who by willful act or
omission . . . causes or permits serious injury to the life or
health of such child shall be guilty of a Class 4 felony."

irrelevant to the issues at her trial.[2]  We affirm the judgment of the trial court.

## FACTS

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

At about 8:00 p.m. on August 9, 1999, Palmer left her four-month-old baby, Jamal Palmer (Jamal), alone with Brown while she went out for drinks with a friend.  She knew Brown had consumed several cans of beer and was intoxicated.  She also knew that Brown had "messed with" Jamal in the past, touching him in inappropriate, sexual ways.  Members of her family had expressed to her concern about her leaving Jamal with Brown.  Palmer knew that Brown had "holler[ed] at" Jamal earlier that day when Jamal was crying.  Before leaving the house, she told Brown, "Don't let nothing happen to my baby."  When she returned home at about 11:00 p.m., she learned that Jamal had been taken by ambulance to the hospital.

---

[2] Appellant also complains that she was "caught by surprise" by the introduction of the conviction order.  However, appellant does not contend that the Commonwealth was obligated to provide the order to her in pretrial discovery.  Nor does she supply any authority that the conviction order should have been excluded on the basis of that "surprise."

The paramedics who were called to Brown's house at 10:16 that night found Brown holding Jamal, who was limp. Jamal died the following day. The medical examiner who performed an autopsy testified that Jamal had suffered numerous injuries and that the cause of his death was acute blunt force trauma to the head.

The medical examiner testified that Jamal's injuries were characteristic of shaken baby impact syndrome. This syndrome reflects injuries caused by a violent shaking of the baby's head, causing the head to whip back and forth. During the shaking, the child's head strikes a hard object, such as a wall or a piece of furniture, causing skull fractures and head bruising.

Jamal's injuries also reflected squeezing pressure applied to his chest with sufficient force to bend and snap the ribs. He also suffered injuries to his genital and anal areas indicating sexual abuse. His injuries were consistent with several violent acts committed upon him at or near the same time.

Over Palmer's objection, the trial court received into evidence a properly authenticated and certified copy of Brown's March 1, 2001 order of conviction of second-degree murder. Detective R.B. Sherrill testified without objection that he was present in court on March 1, 2001, when Brown was convicted of the second-degree murder of Jamal.

ANALYSIS

Hearsay and the Confrontation Clause

As a threshold to Palmer's Sixth Amendment argument, we first consider whether the conviction order was hearsay and if so, whether it fell within a recognized exception to the hearsay rule.

Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted." Garcia v. Commonwealth, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (en banc). In order for hearsay to be admissible, it must "come within one of the many established exceptions to the general prohibition against admitting hearsay." Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992). "'[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" Braxton v. Commonwealth, 26 Va. App. 176, 183-84, 493 S.E.2d 688, 691 (1997) (quoting Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).

Brown's conviction order was hearsay, as it was offered to prove the truth of the information it contained. However, it fell within the scope of Code § 8.01-389(A), a statutory exception to the hearsay rule, which provides: "The records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and

-

certified by the clerk of the court where preserved to be a true record."  This statute "'codifies as part of the official records exception to the hearsay rule judicial "records" which are properly authenticated.'"  Taylor v. Commonwealth, 28 Va. App. 1, 11, 502 S.E.2d 113, 117 (1998) (en banc) (citation omitted).  Brown's conviction order qualified for admission under Code § 8.01-389(A).  See Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990).

Hearsay admissible under Virginia law also must be scrutinized to determine whether it infringes upon the criminal defendant's constitutional right to confront the witnesses against him.

> In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him."  U.S. Const., Amdt. 6; Pointer v. Texas, 380 U.S. 400 (1965) (applying Sixth Amendment to the States). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  Maryland v. Craig, 497 U.S. 836, 845 (1990). . . .  [T]he veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) "the evidence falls within a firmly rooted hearsay exception" or (2) it contains "particularized guarantees of

-

trustworthiness" such that adversarial
testing would be expected to add little, if
anything, to the statements' reliability.

Lilly v. Virginia, 527 U.S. 116, 123-25 (1999).

The official records exception has been accepted as a firmly rooted exception to the hearsay rule. See Ohio v. Roberts, 448 U.S. 56, 66 n.8 (1980); Chapman v. State, 628 A.2d 676, 681 n.3 (Md. 1993). Moreover, as noted above, this Court has recognized the inherent trustworthiness of official judicial records. See Ingram v. Commonwealth, 1 Va. App. 335, 338, 338 S.E.2d 657, 658-59 (1986). Accordingly, admission of Brown's conviction order did not violate Palmer's rights under the Confrontation Clause. See Lilly, 527 U.S. at 124-25.

## Relevancy and Competency

As with all evidence, to be admissible, Brown's conviction order must also have been relevant and competent to address issues pertaining to Palmer's trial. "Evidence is generally admissible if it 'is both material – tending to prove a matter which is properly at issue in the case – and relevant – tending to establish the proposition for which it is offered.'" Taylor v. Commonwealth, 17 Va. App. 271, 275, 437 S.E.2d 202, 204 (1993) (citation omitted). "'[E]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is admissible.' In addition, evidence that adds 'force and strength to other evidence bearing upon' an issue presented is admissible." Caccioppo v.

-

Commonwealth, 20 Va. App. 534, 538, 458 S.E.2d 592, 595 (1995) (citation omitted).

Palmer argues that this case is analogous to cases involving charges against principals in the second degree. In such cases, the Commonwealth must prove the commission of the crime by the principal in the first degree. See Fleming v. Commonwealth, 13 Va. App. 349, 352, 412 S.E.2d 180, 182 (1991). To prove the charge against the principal in the second degree, the Commonwealth must present evidence proving the guilty conduct of the principal in the first degree. A mere recital of the first degree principal's conviction is insufficient. See id. See also Sult v. Commonwealth, 221 Va. 915, 275 S.E.2d 608 (1981); Hall v. Commonwealth, 8 Va. App. 526, 383 S.E.2d 18 (1989). Indeed, "conviction of a principal in the first degree is not a condition precedent to conviction of an accessory . . . ." Dusenbery v. Commonwealth, 220 Va. 770, 771, 263 S.E.2d 392, 393 (1980). The alleged principal in the second degree has the right to challenge at trial and on appeal the sufficiency of the evidence to prove the guilt of the principal in the first degree. See Sult, 221 Va. at 917, 275 S.E.2d at 608; Fleming, 13 Va. App. at 353-55, 412 S.E.2d at 181-82.

Had Palmer been tried as a principal in the second degree to an offense committed by Brown, she would have been entitled to confront and to challenge the sufficiency of the evidence

-

proving that he committed the underlying offense.  Mere proof of his conviction of the offense would have been insufficient.

We find the analogy apt.  Palmer was charged, as a principal in the first degree, with causing or permitting serious injury to her child by her willful act or omission, specifically by leaving Jamal in Brown's care with the result that Jamal suffered severe and fatal injuries inflicted by Brown.  Evidence that Brown inflicted those injuries upon Jamal while the child was in his care was relevant to the charge.  However, Brown's conviction was not an element of the charge against Palmer, and evidence proving that conviction was irrelevant.

Brown's conviction order proved only that on March 1, 2001, he was convicted of second-degree murder.  The order did not identify the victim or the circumstances of the murder.  It did not identify any injury inflicted upon the victim by Brown.  It provided no proof of any element of Palmer's trial.  Thus, the order was irrelevant, and the trial court erred in admitting it into evidence.

### Harmless Error

Non-constitutional error will be deemed harmless if:

> "it plainly appears from the record and the evidence given at trial that the error did not affect the verdict."  "An error does not affect a verdict if a reviewing court can conclude, without usurping the [fact finder's] function, that had the error not

-

> occurred, the verdict would have been the same."

Scott v. Commonwealth, 18 Va. App. 692, 695, 446 S.E.2d 619, 620 (1994) (citations omitted).

The evidence proved overwhelmingly that Palmer knew that Brown had sexually molested Jamal before. She had been warned by family members not to leave Jamal with Brown. On the evening in question she knew that Brown had been drinking, yet she left the child with him while she went drinking with a friend. She acknowledged the danger by admonishing Brown, "Don't let nothing happen to my baby." Under these circumstances, created by Palmer's neglect, Brown generally and sexually abused Jamal, inflicting serious and fatal injuries on him. Based on those injuries and on Jamal's resulting death, Brown was convicted of second-degree murder. Thus, independently of the erroneously admitted order, the evidence overwhelmingly and compellingly established Palmer's guilt. We hold, therefore, that the admission of the order was harmless error.

The judgment of the trial court is affirmed.

Affirmed.