COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey,* Alston and Senior Judge Bumgardner
Argued at Alexandria, Virginia


HUGO ALBERTO SANDOVAL
                                                    OPINION BY
v.        Record No. 1554-13-4              JUDGE ROSSIE D. ALSTON, JR.
                                                 FEBRUARY 24, 2015
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                          John E. Wetsel, Jr., Judge

          Matt Beyrau (Matt Beyrau, PLLC, on brief), for appellant.

          Robert H. Anderson, III, Senior Assistant Attorney General
          (Mark R. Herring, Attorney General, on brief), for appellee.


          Hugo Sandoval ("appellant") was tried and convicted of ten counts of manufacturing

child pornography, eleven counts of indecent liberties with a minor, and one count of conspiracy

to produce child pornography.  On appeal he contends that the trial court erred:  1) when it

denied his motion to dismiss the indictments against him, because the delay prior to his

indictment violated his right to due process; 2) when it denied his motion to strike ten of the

indecent liberties charges on the grounds they were incidental to the manufacturing of child

pornography charges and a conviction for both offenses violated double jeopardy principles;

3) when it denied his motion to strike ten counts of indecent liberties down to one count on the

grounds that the unit of prosecution for indecent liberties is a common scheme or transaction;

and 4) when it denied his motion to strike ten counts of manufacturing child pornography down

to one count on the grounds that the unit of prosecution for manufacturing child pornography is a

_____

          * Justice Kelsey participated in the decision of this case prior to his investiture as a Justice
of the Supreme Court of Virginia.

common scheme or transaction.  For the reasons that follow, we disagree and affirm the judgment of the trial court.

BACKGROUND

A.  Underlying Offenses

In 2004, appellant was convicted of carnal knowledge and aggravated sexual battery for offenses he committed against his stepdaughters, L.M. and S.M.  In August 2004, while incarcerated for those offenses, appellant placed a series of seven calls to his wife, Helen Mason, over a three-day span, in which he requested "kinky pictures" of L.M.  Helen Mason subsequently took ten pictures of L.M. in various sexually explicit poses, following appellant's instructions as to the kind of pictures he wanted.  Mason then delivered the photographs to appellant at the detention center where he was imprisoned. [1]

Appellant and Mason were both criminally charged for their actions.  On September 14, 2004, Mason was indicted on numerous counts of indecent liberties and production of obscene materials arising out of the August 2004 events involving L.M.  In March of the following year, Mason was convicted of five counts of indecent liberties and ten counts of production of obscene material.  She appealed her convictions to this Court.  Thereafter, on April 15, 2005, appellant was indicted on three counts of taking indecent liberties with a minor, ten counts of producing child pornography, and two counts of conspiracy.  Those indictments were subsequently *nolle prosequied* during the pendency of Mason's appeal of her convictions to this Court.  We issued an opinion affirming Mason's convictions on November 7, 2006.  See Mason v. Commonwealth, 49 Va. App. 39, 636 S.E.2d 480 (2006).

---

[1] Upon delivering these photographs to appellant at the detention center where he was imprisoned, Mason took several sexually explicit photographs of appellant, which Mason later showed to L.M.  Appellant was charged and convicted of one count of indecent liberties for those images.  Appellant does not challenge that conviction on appeal.

Still incarcerated for his prior convictions of carnal knowledge and aggravated sexual battery, on November 13, 2012, appellant was indicted on eleven counts of indecent liberties with a minor, in violation of Code § 18.2-370, ten counts of manufacturing child pornography, in violation of Code § 18.2-374.1(B), and three counts of conspiracy, in violation of Code §§ 18.2-22 and 18.2-374.1 all relating to his August 2004 actions involving L.M.

On December 5, 2012, the Office of the Attorney General filed a civil petition to commit appellant as a sexually violent predator pursuant to the Civil Commitment of Sexually Violent Predators Act. Citing appellant's convictions for carnal knowledge and aggravated sexual battery, as well as a Sexually Violent Predator Evaluation of appellant prepared by Dr. Ilona Gravers, a licensed clinical psychologist, who had been designated by the Commissioner of the Department of Behavioral Health and Development Services to conduct a mental health examination of appellant, the Attorney General alleged that appellant met the criteria under Code § 37.2-900 as a sexually violent predator. As detailed in her evaluation, Dr. Gravers diagnosed appellant with a personality disorder that made appellant more likely to engage in future sexually violent acts.

B. Motion to Dismiss

Appellant filed with the trial court a motion to dismiss the indictments against him, alleging that his prosecution following a preindictment delay of over eight years violated his due process rights. He asserted in a supporting memorandum that he was prejudiced by the delay, as "the age of the case and witnesses' diminished memories" made "a proper investigation by the defense . . . all but impossible," "evidence may have been lost or misplaced," and the victim would likely "testify differently" now as an adult than she would have as a minor. Appellant also asserted that the development of "case law favorable to the prosecution" and "society's view of child pornography offenders[, which had] evolved and become more harsh over the

intervening years," "strengthened the prosecution's hand." Finally, appellant expressed concern that Dr. Gravers' evaluation "may have played a role in the charging decision" for his August 2004 offenses and that appellant's statements to Dr. Gravers "could possibly be used against him at either the trial or sentencing in his criminal case." The preindictment delay was not only prejudicial, appellant argued, but also "done by a prosecutor seeking a tactical advantage" at trial.

In a memorandum in opposition to appellant's motion to dismiss, the Commonwealth explained both its decision to *nolle prosequi* the initial charges against appellant and to subsequently seek indictments against appellant in 2012. The Commonwealth stated that it moved to *nolle prosequi* the initial charges against appellant when Helen Mason appealed her convictions because "[t]he Commonwealth wanted to avoid [L.M.] having to testify multiple times. If the Court of Appeals remanded the Mason case it would also remand[] [appellant's] case and the victim would have to testify in a total of four trials if both cases were then re-tried." When Helen Mason's appeal finally resolved, L.M. "was sixteen and it had been three years since she had been removed from [her] home," and appellant "remained incarcerated on other charges." The Commonwealth explained that it chose not to seek indictments against appellant at that time because "[t]he cost of putting [L.M.] through trial was too great compared to any benefit."

The record suggests, however, that the calculus changed in 2012, when the Commonwealth became aware that appellant had contacted L.M.'s sister, and after the Los Angeles County District Attorney's Office contacted the Commonwealth regarding allegations that appellant had forcibly raped a child in California in 2000. That information led the Commonwealth to contact L.M., who expressed her interest in seeing appellant charged because

- 4 -

"she did not want [appellant] doing the same thing to anybody else." The Commonwealth justified its 2012 indictment of appellant for these reasons.

The trial court held a hearing on appellant's motion to dismiss on April 8, 2013. The trial court indicated at that time that the only issue "that had any traction, was the sexually violent predator evaluation" performed by Dr. Gravers. However, upon the Commonwealth Attorney's assertion that he had not read the evaluation, did not intend to introduce it at trial, and intended to confine the evidence to events occurring in 2004, the trial court concluded that the evaluation "[was] not an issue in th[e] case." The trial court denied appellant's motion to dismiss, finding that appellant had failed to prove by a preponderance of the evidence that he suffered actual prejudice or that the Commonwealth intentionally delayed indicting him in order to gain a tactical advantage.

## C. Bench Trial

The trial court held a bench trial on July 17, 2013. The Commonwealth offered two main witnesses. Gene Boyce, a systems officer for the detention center at which appellant was imprisoned, authenticated a CD that contained relevant portions of the August 2004 phone conversations between appellant, Mason, and L.M. L.M. also testified for the Commonwealth. L.M. testified that the voices on the recording belonged to appellant, Helen Mason, and herself. L.M. also identified the ten photographs taken of her by Mason in August 2004. L.M. testified that she "didn't want to . . . [take] the pictures," but her mother threatened to "send [her] back to foster care" if she did not. L.M. testified that all ten photographs were taken on one night. L.M. was only thirteen when the photographs were taken.

Following the Commonwealth's case-in-chief, appellant made a motion to strike. Appellant first moved to strike the eleven counts of indecent liberties down to one count of indecent liberties. Appellant argued that "the unit of prosecution for indecent liberties is not

- 5 -

each proposal" that a minor expose her sexual or genital parts. Rather, appellant asserted that "[i]f there is a continuing kind of scheme or one prolonged proposal . . . [then] the whole incident is the unit of prosecution."

Appellant next moved to strike the charges of indecent liberties on the grounds that each indecent liberties charge was incidental to the manufacture of child pornography charges. Appellant therefore contended that his conviction for both offenses would violate double jeopardy principles. Appellant clarified under questioning from the trial court that an indecent liberties offense is not incidental to every production of child pornography offense – but each indecent liberties offense "in this instance" was incidental to the production of child pornography.

Finally, appellant raised a motion to strike the ten counts of manufacturing child pornography down to one count. Appellant argued that the "unit of prosecution should be the incident during which pictures were taken and there is only one here." In making that argument, appellant acknowledged that this Court's decision in Mason held "that the unit of prosecution for child pornography is the number of pictures," but appellant argued that the Mason Court's decision was incorrect.

The trial court denied each of appellant's motions to strike. Appellant did not put on any evidence and renewed his motions to strike, which the trial court again denied. The trial court found appellant guilty of each of the ten counts of manufacturing child pornography and the eleven counts of indecent liberties with a minor.

### D. Sentencing

The trial court held a sentencing hearing on August 9, 2013. During the hearing, the Commonwealth submitted a sex offender evaluation form prepared by Dr. Gravers. The form was required at sentencing under Code § 19.2-301 and distinct from Dr. Gravers' sexually

violent predator evaluation that was previously prepared for the civil case. However, Dr. Gravers consulted the sexually violent predator evaluation while preparing the sex offender evaluation. The trial court permitted the introduction of the sex offender evaluation over appellant's objection that Dr. Gravers improperly used the prior sexually violent predator evaluation report as a source of information. The trial court then sentenced appellant to a total term of imprisonment of thirty years, with ten years suspended.

This appeal followed.

## ANALYSIS

### A. Preindictment Delay

Appellant first contends that the trial court erred when it denied his motion to dismiss the indictments for violating his right to due process. On appeal, appellant argues that the charges against him should have been dismissed with prejudice because the preindictment delay of over eight years was entirely unjustified, prejudicial, and done by a prosecutor seeking a tactical advantage at trial.

It is not questioned that the primary guarantee against stale prosecutions is the statute of limitations. See Anderson v. Commonwealth, 48 Va. App. 704, 711, 634 S.E.2d 372, 375 (2006) ("Virginia has no general statute of limitations on felonies."). As we have noted previously, "the Constitution plays [only] a 'limited role' in situations alleging preindictment delay." Id. at 712, 634 S.E.2d at 375 (quoting Morrisette v. Commonwealth, 264 Va. 386, 393, 569 S.E.2d 47, 52 (2002)). "In cases of [preindictment] delay, the issue is whether the accused was denied due process as a result of the delay." Hall v. Commonwealth, 8 Va. App. 526, 529, 383 S.E.2d 18, 20 (1989). "Due process principles bar a prosecution for preindictment delay only when the 'defendant incurred actual prejudice as a result of the delay' and the 'prosecutor intentionally delayed indicting the defendant to gain a tactical advantage.'" Anderson, 48 Va. App. at 712,

634 S.E.2d at 376 (quoting Morrisette, 264 Va. at 393, 369 S.E.2d at 52). "The defendant bears the burden of proving both actual prejudice and improper purpose." Morrisette, 264 Va. at 393, 369 S.E.2d at 52.

Appellant has not shown that he was meaningfully impaired in his ability to defend against the charges to such an extent that he was denied a fair trial. On appeal, appellant advances numerous assertions of prejudice. Appellant contends that he was prejudiced by the preindictment delay because during that time society's view of child pornography offenders hardened, this Court issued an opinion that strengthened the Commonwealth's hand in plea negotiations, the Commonwealth gained access to Dr. Gravers' sexually violent predator evaluation, and L.M. "had grown up, gone to counseling, and become a better witness for" the Commonwealth. However, to constitute a showing of actual prejudice, appellant must prove actual and concrete prejudice as a result of the delay, not merely speculative prejudice. See generally United States v. Madden, 682 F.3d 920, 929 (10th Cir. 2012) ("'To constitute a showing of actual prejudice . . . the defendant must show that he has suffered definite and not speculative prejudice.'" (quoting United States v. Colonna, 360 F.3d 1169, 1177 (10th Cir. 2004))). Accord United States v. Gregory, 322 F.3d 1157, 1165 (9th Cir. 2003); United States v. Crouch, 84 F.3d 1497, 1523 (5th Cir. 1996); Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990); United States v. Antonino, 830 F.2d 798, 805 (7th Cir. 1987).

Appellant's allegations fail to show actual prejudice to his right to a fair trial. Appellant's claim that society's view of child pornography offenders has hardened over the years and this "increased intolerance for such offenders *would have been* reflected in a jury pool, *had* this case gone to a jury trial," is entirely speculative. Appellant's Br. at 13. Appellant waived his right to a jury trial, he has not asserted that he would have chosen a jury trial but for the delay, and he has not asserted that society's "increased intolerance" actually prejudiced his bench

trial. Moreover, even if appellant had chosen a jury trial, his claim would still fall short of demonstrating actual prejudice. Implicit in appellant's argument that society's hardening view "would have been reflected in a jury pool," is the speculative premise that this "increased intolerance" would have biased the jury against him. But such an unsubstantiated claim of bias falls short of demonstrating actual, concrete prejudice.

Similarly, appellant has not shown how the Commonwealth's "strengthen[ed] . . . hand in plea negotiations" prejudiced him at trial. Appellant was not entitled to an even hand in plea negotiations with the Commonwealth, and the Commonwealth was not required to entrench its position based on the status quo at the time of appellant's offenses. Like all agreements, plea negotiations are fluid until finalized. See generally Lampkin v. Commonwealth, 44 Va. App. 709, 723, 607 S.E.2d 722, 729 (2005) ("Absent judicial approval, a proposed plea agreement cannot be binding on the Commonwealth because the defendant has suffered no harm.").

Likewise, appellant's conclusory allegation that L.M. matured as a witness during the preindictment delay does not demonstrate prejudice to appellant's defense at trial. Despite his claim that L.M. "had become a better witness" for the Commonwealth, appellant has not demonstrated any effect this had on his ability to defend against the charges at trial. As appellant conceded below, he did not lose any evidence or witnesses as a result of the delay. Appellant also stated on brief that "there was *no* significant additional investigation into this case" during the delay. (emphasis in original). At trial, the case remained as before, including L.M.'s testimony.

Finally, appellant has not demonstrated that the Commonwealth's access to the sexually violent predator evaluation prepared for the civil adjudication prejudiced his right to a fair trial, as the Commonwealth's Attorney conceded during the hearing on appellant's motion to dismiss that the report was not relevant to the charges against appellant. Even more significant, the

evaluation was not introduced during appellant's trial. Put simply, appellant has not demonstrated any real, concrete prejudice the preindictment delay caused to his ability to defend against the charged offenses.

Because appellant failed to meet his burden of proving that he suffered actual prejudice as a result of the preindictment delay, we need not consider at length appellant's claim that the Commonwealth intentionally delayed indicting him in order to gain a tactical advantage at trial. We find it sufficient to note that the trial court concluded that the Commonwealth delayed indicting appellant out of "consideration for the victim" and not in order to gain a tactical advantage over appellant. The trial court's determination on the question of intent is a finding of fact to which we accord great deference and reverse only if clearly erroneous. See Evans v. Commonwealth, 228 Va. 468, 479, 323 S.E.2d 114, 120 (1984) (finding that the record supported the trial court's finding that "the evidence fail[ed] to prove . . . that the Commonwealth purposefully and wrongfully delayed resolution of the defendant's petition for a writ of habeas corpus in order to achieve a tactical advantage").

Upon our review of the record, we find that the trial court's decision is not without support in the evidence. During the hearing on appellant's motion to dismiss, the Commonwealth's Attorney explained that he delayed indicting appellant prior to November 2012 because "[t]he cost of putting [L.M.] through trial was too great compared to any [possible] benefit." Moreover, the Commonwealth's Attorney stated that he charged appellant only after speaking to the victim, who expressed her willingness to testify in order to prevent appellant from doing "to anybody else" what he had done to her. Accordingly, we find that appellant has not demonstrated that the Commonwealth intentionally delayed indicting him in order to gain a tactical advantage at trial.

Because appellant has not shown that the preindictment delay caused him actual prejudice at trial and that the Commonwealth intentionally delayed indicting him in order to gain a tactical advantage, his due process challenge must fail.

## B. Double Jeopardy

Appellant next contends that the trial court erred when it denied appellant's motion to strike ten of the indecent liberties charges on the grounds that they are incidental to the manufacture of child pornography charges and a conviction for both violates double jeopardy principles.

"The constitutional provision concerning double jeopardy embodies three guarantees: '(1) It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense.'" Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 797 (1981) (quoting Illinois v. Vitale, 447 U.S. 410, 415 (1980)). "Two offenses will be considered the same when (1) the two offenses are identical, (2) the former offense is lesser included in the subsequent offense, or (3) the subsequent offense is lesser included in the former offense." Commonwealth v. Hudgins, 269 Va. 602, 605, 611 S.E.2d 362, 364 (2005). The Double Jeopardy Clause "does not apply where the same conduct is used to support convictions for separate and distinct crimes." Brown v. Commonwealth, 37 Va. App. 507, 517, 559 S.E.2d 415, 420 (2002). "It is well settled that two or more distinct and separate offenses may grow out of a single incident or occurrence, warranting the prosecution and punishment of an offender for each." Jones v. Commonwealth, 208 Va. 370, 375, 157 S.E.2d 907, 910 (1967).

"When 'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each [offense charged] requires proof of an additional fact which the other does not.'"

Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) (quoting

Blockburger v. United States, 284 U.S. 299, 304 (1932)).  In applying this test, we "look at the

offenses charged in the abstract, without referring to the particular facts of the case under

review."  Id.  "This standard requires that we view the elements of the offenses generally and

conceptually, rather than the elements of the offenses as charged in a specific instance."  Johnson

v. Commonwealth, 58 Va. App. 303, 323, 709 S.E.2d 175, 185 (2011).  "Thus, '[a] double

jeopardy violation exists only if the offenses *always* require proof of the same elements.'"  Id.

(quoting Davis v. Commonwealth, 57 Va. App. 446, 456, 703 S.E.2d 259, 263 (2011) (emphasis

added)).

As in effect at the time of appellant's offenses, [2] Code § 18.2-374.1 stated, in relevant

part:

> B.  A person shall be guilty of a Class 5 felony who:
>
> 1.  Accosts, entices or solicits a person less than eighteen years of age with intent to induce or force such person to perform in or be a subject of sexually explicit visual material; or
> 2.  Produces or makes or attempts or prepares to produce or make sexually explicit visual material which utilizes or has as a subject a person less than eighteen years of age; or
> 3.  Who knowingly takes part in or participates in the filming, photographing or other reproduction of sexually explicit visual material . . . which utilizes or has as a subject a person less than eighteen years of age.

Sexually explicit visual material is defined "as a picture, photograph, sculpture, motion

picture film, digital image, . . . or similar visual representation which depicts a lewd exhibition of

---

[2] Code § 18.2-374.1(B)(1) has since been amended to refer to "child pornography" rather than "sexually explicit visual material."  However, the offense is essentially the same, as the current statute defines child pornography as meaning sexually explicit visual material.  Code § 18.2-374.1(A).

nudity, . . . or sexual excitement, sexual conduct or sadomasochistic abuse."  Code

§ 18.2-374.1(A).

Code 18.2-370(A), on the other hand, penalizes any person over the age of eighteen who,

with lascivious intent:

> (1) Expose[s] his or her sexual or genital parts to any child to
> whom such person is not legally married or propose[s] that any
> such child expose his or her sexual or genital parts to such person;
> or . . . (3) Propose[s] that any such child feel or fondle his own
> sexual or genital parts of the sexual or genital parts of such person
> or propose that such person feel or fondle the sexual or genital
> parts of any such child; or (4) Propose[s] to such child the
> performance of an act of sexual intercourse . . . or (5) Entice[s],
> allure[s], persuade[s], or invite[s] any such child to enter any
> vehicle, room, house, or other place, for any of the purposes set
> forth in the preceding subdivisions . . . .

Code § 18.2-370(B) states, in relevant part, that any person over the age of eighteen who, "with

lascivious intent, knowingly and intentionally . . . encourages [a person under the age of 18

years] to perform in or be a subject of sexually explicit material is guilty of a Class 5 felony."

Analytically, the charged offenses do not require proof of the same elements in all

circumstances.  Appellant conceded this point at trial.  When asked by the trial court whether

"every production of child pornography [includes] . . . an indecent liberty," appellant answered,

"[n]ot in every one."  We agree.  At the time of his offenses, Code § 18.2-374.1(B)(1) required

proof that an adult enticed or solicited a minor "to perform in or be a subject of *sexually explicit*

*visual material*," which is not a *required* element of the offense of indecent liberties.  (Emphasis

added).  While Code § 18.2-370(B) proscribes a person over the age of eighteen from

encouraging a minor "to perform in or be subject of sexually explicit material," the prosecution

is not required to prove such an offense in order to obtain a conviction under Code § 18.2-370.

Because Code § 18.2-370 includes several disjunctive elements, the Commonwealth can obtain a

conviction of indecent liberties, even in the absence of evidence that appellant encouraged the

- 13 -

victim to perform in or be the subject of sexually explicit visual material. See Dezfuli v. Commonwealth, 58 Va. App. 1, 11, 707 S.E.2d 1, 6 (2011).

Similarly, while sexually explicit visual material includes visual representations that depict "a lewd exhibition of nudity," Code § 18.2-374.1(B) was also written in the disjunctive and did not require as an element of proof that the perpetrator exposed his or her genital or sexual parts to the victim or proposed that the victim expose his or her sexual or genital parts to such person, which is an element of indecent liberties. See Code § 18.2-374.1(A) (defining sexually explicit visual material to include visual representations of sexual conduct or sadomasochistic abuse); see also Code § 18.2-390 (defining sexual conduct to include "an act of apparent sexual stimulation . . . with a person's *clothed* or unclothed genitals," and sadomasochistic abuse as "actual or explicitly simulated flagellation or torture by or upon a person who is nude *or clad in undergarments, a mask or bizarre costume . . .*" (emphasis added)). In addition, Code § 18.2-370 requires that appellant acted with "lascivious intent," whereas then-Code § 18.2-374.1 contained no equivalent element.

Because each charged offense required proof of an additional fact that the other did not, the trial court did not err when it denied appellant's motion to strike the ten indecent liberties charges.

### C. Indecent Liberties Convictions

Appellant next contends that the trial court erred in denying his motion to strike ten counts of indecent liberties down to one count because the unit of prosecution for indecent liberties is a common act, scheme, or transaction and not each proposal that a minor expose their private parts. Because "the ten photographs of the victim were taken over the course of one evening into early the next morning," appellant contends "there was clearly only one transaction or scheme . . . and that is the unit of prosecution for this offense." Appellant's Br. at 20.

- 14 -

"In a simultaneous prosecution, the role of the Double Jeopardy Clause is 'limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" De'Armond v. Commonwealth, 51 Va. App. 26, 32, 654 S.E.2d 317, 320 (2007) (quoting Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002)).  However, "conduct may constitute more than one violation of a single criminal proscription." Jordan v. Commonwealth, 2 Va. App. 590, 593, 347 S.E.2d 152, 154 (1986). "Where the legislature has authorized cumulative punishments, regardless of whether the offenses are the 'same,' the prosecutor may seek and the trial court may impose cumulative punishments in a single trial." Id. at 594, 347 S.E.2d at 154.  "The multiple punishments prohibition, therefore, remains from start to finish wholly dependent on statutory interpretation." De'Armond, 51 Va. App. at 33, 654 S.E.2d at 320 (citing John L. Costello, Virginia Criminal Law & Procedure § 51.3-4, at 688-90 (3d ed. 2002)).

The trial court convicted appellant of ten violations of Code § 18.2-370.  Code § 18.2-370(A)(1) states that "[a]ny person 18 years of age or over, who, with lascivious intent, knowingly and intentionally . . . propose[s] that any . . . child expose his or her sexual or genital parts to such person" is guilty of a Class 5 felony.  Under the plain language of the statute, "*[t]he simple act of proposing or inviting constitutes the completed crime* if the offender is over the age of 18, the act is done with lascivious intent and the victim is under the age of 14." Hix v. Commonwealth, 270 Va. 335, 347, 619 S.E.2d 80, 87 (2005) (emphasis added) (noting that the victim need not "agree to perform any of the acts").  In other words, the gravamen of the offense is the *proposal or encouragement* to a child, under the age of fourteen, to expose his or her sexual parts.  See Baker v. Commonwealth, 284 Va. 572, 576, 733 S.E.2d 642, 644-45 (2012) (noting that when determining "when one offense ends and the next begins," courts should determine "the gravamen of the offense" for which the defendant was convicted).  Consistent

- 15 -

with this plain reading of Code § 18.2-370(A)(1), we find that each distinguishable incident in which an adult articulates such a proposal constitutes a violation of Code § 18.2-370(A)(1).

Code § 18.2-370(C) adds support to this conclusion. That code section states, in relevant part, that "[a]ny person who is convicted of a second or subsequent violation of this section is guilty of a Class 4 felony, provided that . . . the offenses were not part of a common act, transaction or scheme . . . ." Contrary to appellant's assertions, Code § 18.2-370(C) by its express terms applies only to enhanced punishments for "second or subsequent violation[s]." And by permitting enhanced punishment for "second or subsequent violation[s]" provided the violations "were not a part of a common act, transaction or scheme," Code § 18.2-370(C) underscores the General Assembly's expressed intent in Code § 18.2-370(A)(1) that distinguishable proposals are subject to multiple first violation charges, regardless of whether the proposals occurred during a common transaction or scheme.

We therefore reject appellant's contention that the trial court erred by denying his motion to strike ten counts of indecent liberties down to one count because the offenses occurred during a common transaction or scheme.

### D. Manufacturing Child Pornography Convictions

Finally, appellant contends that "[t]he trial court erred when it denied [his] motion to strike [ten] counts of manufacturing child pornography down to [one] count on the grounds that the unit of prosecution for manufacturing child pornography is a common scheme or transaction, and there was only one such scheme or transaction in this case. Mason v. Commonwealth, 49 Va. App. 39 (2006), should be overruled because it leads to an absurd result."

"'When considering multiple punishments for a single transaction, the controlling factor is legislative intent.'" Mason, 49 Va. App. at 46, 636 S.E.2d at 483 (quoting Kelsoe v. Commonwealth, 226 Va. 197, 199, 308 S.E.2d 104, 104 (1983)). "Where the legislature has

authorized cumulative punishments, regardless of whether the offenses are the 'same,' the prosecutor may seek and the trial court may impose cumulative punishments in a single trial." Jordan, 2 Va. App. at 594, 347 S.E.2d at 154.

In this case, the trial court convicted appellant of ten violations of Code § 18.2-374.1(B). Code § 18.2-374.1(B) proscribes the production or attempted production of child pornography, which Code § 18.2-374.1(A) defines as "*a* picture, photograph, drawing, sculpture, motion picture film, digital image . . . or similar visual representation" depicting lewd conduct or sexual activity. (Emphasis added). As we explained in Mason, "[b]y using the word 'a' followed by a succession of singular nouns in the definition of [child pornography] in Code § 18.2-374.1(A), the Virginia legislature has demonstrated its clear intent that [production] of a single photograph could constitute an offense under Code § 18.2-374.1 and that multiple punishments would result from multiple violations of the statute." 49 Va. App. at 48, 636 S.E.2d at 484; see Papol v. Commonwealth, 63 Va. App. 150, 153, 754 S.E.2d 918, 920 (2014) (stating that "[t]his analysis tracks the underlying purpose of the statute to protect children from pornographers, pedophiles, and others who seek to take advantage of their vulnerabilities"). Therefore, we conclude that the number of separate offenses of manufacturing or producing child pornography "corresponds to the number of individual items of [child pornography]." Id.

Acknowledging this Court's prior holding that the number of offenses under Code § 18.2-374.1(B) corresponds to "the number of pictures or videos," appellant contends on brief that "Mason v. Commonwealth should be overruled because it leads to an absurd result." Appellant's Br. at 21-22. The interpanel accord doctrine precludes our reconsideration of Mason. Under that doctrine, a decision from a panel of this Court "cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003).

- 17 -

For the foregoing reasons, we conclude that the trial court did not err by denying appellant's motion to strike.

## CONCLUSION

For the reasons stated above, we find that the trial court did not err in denying appellant's motion to dismiss the indictments and did not err in denying appellant's motions to strike the charges of indecent liberties or manufacturing child pornography.

<u>Affirmed.</u>