Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Compton, S.J.

ERIC LIN HARRIS                        OPINION BY
                           SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 000589               January 12, 2001

COMMONWEALTH OF VIRGINIA


                FROM THE COURT OF APPEALS OF VIRGINIA


     In this criminal appeal involving a conviction for dealing

in narcotics, the sole question is whether the Court of Appeals

of Virginia erred in determining that the prosecution

sufficiently established the chain of custody of the drugs in

question.

     Indicted in the Circuit Court of the City of Hampton for

possession with intent to distribute cocaine, in violation of

Code § 18.2-248, and for possession of a firearm while in

possession of cocaine, in violation of Code § 18.2-308.4(B),

defendant Eric Lin Harris was convicted of the offenses in a

bench trial in February 1999.  During trial, the court overruled

defendant's objection to receipt in evidence of the certificate

of analysis of the cocaine.  In admitting the certificate, the

trial judge ruled, contrary to defendant's contention, that the

prosecution properly established the chain of custody of the

drugs.

In April 1999, the court sentenced defendant to a suspended term of five years on the possession with intent to distribute charge and to three years' imprisonment on the firearm charge.

Subsequently, the Court of Appeals affirmed the convictions in an unpublished opinion. Harris v. Commonwealth, Record No. 0909-99-1 (March 7, 2000). We awarded defendant an appeal to consider the chain of custody issue.

The facts relevant to the issue presented are undisputed. In September 1998, Hampton police officer Jimmie Wideman observed defendant operating a motor vehicle in excess of the speed limit in a school zone. Following a traffic stop, the officer recovered from defendant's person a loaded pistol, a bag containing what was later found to be cocaine, and $1,730 in currency.

After leaving the scene of the arrest, Wideman took the recovered items to the Hampton Police Station. According to the officer's testimony, the items were assigned "the appropriate case and identification numbers," the numbers were placed on tags, the tags were affixed to the items, and the items placed in an "evidence envelope." The "suspected cocaine" was assigned "item number five."

Wideman then placed on "Item 5" identifying marks, which included the case number; defendant's name; the officer's name; and the time, date, and location of recovery. After sealing the

2

envelope with tape, upon which the officer placed his initials, he handed the envelope "directly" to B. Ronnie Staton, a property and evidence custodian at the police department.

Upon receipt of the sealed evidence bag from Wideman at "the counter" of the property and evidence division office, Staton placed his name and the date ("9-21-98") on the bag, put it in an evidence locker, and locked it. No other person had access to the locker, Staton possessing the only two keys.

Three days later, on September 24, 1998, Staton delivered Item 5 to a person at the Tidewater Laboratory of the Commonwealth's Division of Forensic Science in Norfolk, and "tagged it in" under a specific "forensic lab number" assigned to the item.

At trial, Wideman testified that the evidence bag and contents were "in substantially the same condition as when" initially deposited with Staton, except that the forensic tape had been removed from the bag. Staton likewise identified the bag and contents at trial as the same as handed to him by Wideman and, in turn, delivered to the forensic laboratory.

Over defendant's objection, the trial court received in evidence the "Certificate of Analysis" relating to "Item 5." The certificate is dated November 9, 1998, refers to the police case number and to the "Lab" number, names the defendant as the "Suspect," shows the "Date Received: 09/24/98," states "Evidence

Submitted By: B. R. Staton," and describes Item 5 as "Sealed Packaging containing off-white chunky solid material." The certificate shows the results of the analysis to be "Cocaine . . . 12.963 grams of solid material."

A forensic scientist signed the certificate, stating "that I performed the above analysis or examination as an employee of and in a laboratory operated by the Division of Forensic Science, and that the above is an accurate record of the results of that analysis or examination."

Code § 19.2-187.01 authorizes a trial court to receive a certificate of analysis as evidence of the chain of custody of the material tested. As pertinent here, the statute provides that a "report of analysis duly attested by the person performing such analysis or examination in any laboratory operated by . . . the Division of Forensic Science or any of its regional laboratories . . . shall be prima facie evidence in a criminal . . . proceeding as to the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination. . . ."

These provisions relate, of course, to the custody of the contraband while it is in the testing laboratory. The statute "relieves the Commonwealth of having to present testimony regarding the chain of custody of an analyzed or examined

4

substance, provided certain safeguards are met."  Dunn v. Commonwealth, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995).

The defendant's sole contention on appeal is that the prosecution failed to prove the cocaine seized by Wideman and held by Staton was received by an "authorized agent" of the laboratory, as required by the foregoing statute.  Consequently, the defendant argues, because the chain of custody of the cocaine was not established, the Court of Appeals erred in affirming the trial court's action in receiving the certificate, and both charges should be dismissed.  We disagree.

Under the uncontradicted evidence, the trial court clearly was entitled to infer that Staton delivered Item 5 to an "authorized agent" of the laboratory, as required by statute. Stated differently, the prosecution established, prima facie, that the contraband was received by such an agent; there is no hint that it was received, for example, by some mere non-employee bystander who happened to be loitering on the laboratory's premises.

At the moment Staton handed Item 5 to the person at the laboratory, the bag immediately was assigned a specific "forensic lab number."  Certainly, this is an act one would expect to be performed by an authorized agent of the laboratory. And, reasonably to be inferred from the evidence is the fact

5

that the number was assigned by the person receiving the material from Staton.

This same forensic number appears on the certificate in question along with the police department case number, the defendant's name, and the date of receipt of the material. These facts support the conclusion that the examiner analyzed the same material received by the person to whom Staton delivered it. Moreover, this latter conclusion is buttressed by the examiner's attestation on the certificate that she, in fact, analyzed the substance in Item 5.

Accordingly, we hold that the Commonwealth complied with the statute and established, prima facie, that the material in question was received by an authorized agent of the laboratory. Parenthetically, we note that defendant had the opportunity to rebut this prima facie showing, but failed to do so. See Code § 19.2-187.1 (accused has right to call as adverse witness, at cost of Commonwealth, person performing analysis "or involved in the chain of custody").

Consequently, the judgment of the Court of Appeals will be

Affirmed.