COURT OF APPEALS OF VIRGINIA

Present:    Judge Kelsey, Senior Judges Bumgardner and Fitzpatrick
Argued at Alexandria, Virginia


ANGEL M. ANDERSON

                                                                OPINION BY
v.        Record No. 0807-05-4                 JUDGE D. ARTHUR KELSEY
                                                            SEPTEMBER 12, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

Dawn M. Butorac, Deputy Public Defender (Office of the
Public Defender, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


A jury convicted Angel M. Anderson of rape, robbery, and forcible sodomy.  On appeal,

Anderson argues that:

- DNA was seized from him in violation of the Fourth Amendment
  and then used as a basis for seeking a search warrant to confirm the
  DNA match,

- the delay between the crime and his arrest was so long as to violate
  his due process rights,

- the DNA test results should not have been admitted because the
  Commonwealth's chain-of-custody proof violated his confrontation
  rights and, in any event, was factually inadequate, and

- he should not have been convicted of robbery because no facts
  suggested he intimidated the victim into giving him her money.

Disagreeing with each of these assertions, we affirm his convictions.

I.

Under settled principles, we review the evidence in the "light most favorable" to the

Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

Early one morning in 1991, Laura Berry was walking to an elementary school in Fairfax where she worked as an administrative assistant. While walking through a wooded area near the school, a man appeared and grabbed her from behind by the throat and face. The attacker pulled her to the bottom of the ravine, raped and sodomized her, and then robbed her of $63.

At a local hospital, Berry was examined by an emergency room physician who used a Physical Evidence Recovery Kit (PERK) to obtain specimens for evidence. The investigating officer forwarded the specimens to the Virginia Department of Forensic Science (DFS). DFS scientists isolated a sperm fraction on the vaginal swabs collected from Berry. Given the limits of DNA technology at that time, however, they were unable to identify the attacker's DNA from that sperm fraction. Because Berry did not know her attacker, the crime remained unsolved.

Ten years later, in 2001, after advancements in DNA technology, the investigating officer requested a new test on Berry's PERK specimen. Using newly developed techniques, the forensic scientists extracted the attacker's DNA from the sperm fraction and entered the results into the Virginia Forensic Laboratory's DNA databank.

In 2003, Anderson was arrested in Stafford County on unrelated rape and sodomy charges. Upon being arrested, Anderson's DNA was obtained and entered into the DNA databank. Shortly thereafter, the investigating officer handling Berry's case learned that the DNA taken from Anderson matched the DNA of the man who attacked Berry in 1991. Based on this match, the investigating officer obtained a search warrant to secure additional saliva swabs

- 2 -

from Anderson.  Tests of the DNA from those samples confirmed Anderson as the man whose sperm had been found in Berry after the 1991 attack.

Presented with this evidence, a jury found Anderson guilty of raping, sodomizing, and robbing Berry.  From these convictions he now appeals.

II.

A.    DNA SAMPLES & CODE § 19.2-310.2:1

Code § 19.2-310.2:1 authorizes law enforcement officers to obtain a sample of "saliva or tissue" for DNA testing from anyone arrested for certain violent felonies.  The testing is meant to isolate genetic "identification characteristics specific to the person."  Code § 19.2-310.2:1.  After a magistrate or grand jury confirms that probable cause exists for the arrest, id., the sampling logistics are coordinated by the "law-enforcement agency responsible for arrest booking in the jurisdiction."  Code § 19.2-310.3:1(A).

On appeal, Anderson argues that the statute violates the Fourth Amendment because it authorizes what amounts to a "suspicionless search" unrelated to any effort by law enforcement to obtain evidence for the specific charge justifying the arrest.  We disagree.

A search of an arrestee requires no independent legal justification apart from the arrest itself.  "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."  United States v. Robinson, 414 U.S. 218, 235 (1973).  "It is the fact of the lawful arrest which establishes the authority to search."  Id.  Upon a "lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."  Id.  "With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy

otherwise protected by the Fourth Amendment." Jones v. Murray, 962 F.2d 302, 306 (4th Cir. 1992).

That is particularly true when the search merely seeks to identify the arrestee. When a person is "arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it." Id.; see also Smith v. United States, 324 F.2d 879, 882 (D.C. Cir. 1963) (recognizing as "elementary" the proposition that arrestees may be fingerprinted and photographed "as part of routine identification processes"). The state's interest in the arrestee's identity, moreover, "is relevant not only to solving the crime for which the suspect is arrested, but also for maintaining a permanent record to solve other past and future crimes." Jones, 962 F.2d at 306.

Though the probable cause justifying an arrest likewise justifies a search incident to an arrest, it does not follow that the Fourth Amendment has no further role in limiting the manner of the incidental search. In this case, however, Anderson does not challenge the specific manner in which his DNA sample was taken or the nominal degree of physical invasiveness it may have involved. See id. at 307 (finding that even the DNA blood test sampling procedure involves "virtually no risk, trauma, or pain" (citation omitted)). Thus, this case does not require us to determine at what point a search incident to an arrest becomes unreasonable due to the manner in which it is performed.

For these reasons, we hold that the collection of a DNA sample from Anderson under Code § 19.2-310.2:1 did not violate the Fourth Amendment's prohibition of unreasonable searches and seizures. The procedure involved a permissible application of law enforcement's authority to search an arrestee incident to an arrest.[1]

---

[1] At oral argument, Anderson asserted that the Fourth Amendment applies to each computerized "search" of DNA records *within* the state's DNA databank. We find this assertion

- 4 -

## B. PREINDICTMENT DELAY

Anderson also claims it took too long for law enforcement to solve the crime and to arrest him on the 1991 Fairfax charges. Due process principles, Anderson contends, bar any criminal prosecution of him at this late date. We find no support for this argument, however, under governing precedent.

The common law imposed no time limitation on the state's initiation of felony prosecutions. See 1 Charles E. Torcia, Wharton's Criminal Law § 92, at 628 (15th ed. 1993); Joel Prentiss Bishop, Commentaries on the Law of Statutory Crimes § 257, at 243 (2d ed. 1883). The imposition of a specific preindictment time limit on such prosecutions remains solely a matter of "legislative grace." Torcia, *supra* § 92, at 629. Consistent with the common law, Virginia has no general statute of limitation on felonies. See Foster v. Commonwealth, 44 Va. App. 574, 576, 606 S.E.2d 518, 519 (2004), aff'd, 271 Va. 235, 623 S.E.2d 902 (2006).

Even in the absence of a statutory limitations period, the Constitution plays a "limited role" in situations alleging preindictment delay. Morrisette v. Commonwealth, 264 Va. 386, 393, 569 S.E.2d 47, 52 (2002) (citing United States v. Lovasco, 431 U.S. 783, 789 (1977); Hall v. Commonwealth, 8 Va. App. 526, 528-29, 383 S.E.2d 18, 20 (1989)). "There is," after all, "no constitutional right to be arrested." Lovasco, 431 U.S. at 792 n.13 (quoting Hoffa v. United States, 385 U.S. 293, 310 (1966)).

Due process principles bar a prosecution for preindictment delay only when the "defendant incurred actual prejudice as a result of the delay" and the "prosecutor intentionally delayed indicting the defendant to gain a tactical advantage." Morrisette, 264 Va. at 393, 569 S.E.2d at 52 (citations and brackets omitted). "The defendant bears the burden of proving both

---

meritless. See Johnson v. Quander, 440 F.3d 489, 499 (D.C. Cir. 2006) (holding that a search of the Combined DNA Index System does not implicate the Fourth Amendment).

actual prejudice and improper purpose." Id. (citations omitted); see also United States v. Gouveia, 467 U.S. 180, 192 (1984); United States v. Marion, 404 U.S. 307, 324 (1971).

In this case, we need not examine in any detail Anderson's claim of actual prejudice. Anderson admits he cannot prove the prosecutor intentionally stalled the indictment in an effort to obtain some tactical advantage, a necessary showing under the Virginia Supreme Court's decision in Morrisette. Anderson acknowledges his due process challenge fails under Morrisette, but urges us to abandon that precedent and to adopt the Fourth Circuit's approach in Howell v. Barker, 904 F.2d 889, 895 (4th Cir. 1990), which, instead of examining prosecutorial misconduct, focuses more broadly on "fundamental conceptions of justice" and the "community's sense of fair play and decency." We decline the invitation to adopt the Howell standard, as we have neither the power[2] nor the inclination[3] to do so.

Applying the standard for preindictment delay recognized by the Virginia Supreme Court in Morrisette — which requires proof that the "prosecutor intentionally delayed indicting the defendant to gain a tactical advantage," Morrisette, 264 Va. at 393, 569 S.E.2d at 52

---

[2] Only decisions of the United States Supreme Court can supersede binding precedent from the Virginia Supreme Court. See generally Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J., concurring) ("[N]either federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."); United States ex rel. Lawrence v. Woods, 432 F.2d 1072, 1075-76 (7th Cir. 1970) (agreeing that, when "passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same position; there is a parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court" (citation omitted)); Owsley v. Peyton, 352 F.2d 804, 805 (4th Cir. 1965) (rejecting the argument that a Fourth Circuit decision "changed existing law" in Virginia courts, as Virginia courts are "not obliged" to follow Fourth Circuit decisions).

[3] As the Fourth Circuit has acknowledged, "every circuit, other than our own and the Ninth Circuit, has indeed held that, in order to establish that a lengthy preindictment delay rises to the level of a due process violation, a defendant must show not only actual substantial prejudice, but also that 'the government intentionally delayed the indictment to gain an unfair tactical advantage or for other bad faith motives.'" Jones v. Angelone, 94 F.3d 900, 905 (4th Cir. 1996) (citations omitted) (following Howell pursuant to the interpanel accord doctrine).

(brackets omitted) — we hold that Anderson's concession that he cannot make that showing necessarily defeats his due process argument.

### C. CERTIFICATE OF ANALYSIS — CHAIN OF CUSTODY

Anderson next argues the Commonwealth failed to prove the chain of custody for the PERK samples tested by DFS. Any use of Code § 19.2-187.01's inference violates his confrontation rights, Anderson contends. He also claims the lack of testimony from the emergency room nurse and law enforcement personnel likewise renders inadmissible the certificate of analysis and accompanying expert testimony. Disagreeing with both assertions, we find the statutory inference constitutional and the remaining chain-of-custody proof sufficient.

(i) *The Statutory Chain-Of-Custody Inference*

We begin with Code § 19.2-187.01, which "authorizes a trial court to receive a certificate of analysis as evidence of the chain of custody of the material tested." Harris v. Commonwealth, 261 Va. 185, 188, 541 S.E.2d 547, 548 (2001). An authenticated certificate of analysis creates a *prima facie* inference that DFS maintained a proper chain of custody at all times while the samples were "in the laboratory." Charles E. Friend, The Law of Evidence in Virginia § 13-5, at 529 (6th ed. 2003). Relying on Crawford v. Washington, 541 U.S. 36 (2004), Anderson argues that this statutory inference violates the Confrontation Clause of the Sixth Amendment. Like the trial court, we too reject this argument.

The Sixth Amendment limits a defendant's confrontation right to "witnesses against him." Davis v. Washington, 126 S. Ct. 2266, 2273 (2006) (quoting U.S. Const. amend. VI). In this way, "the Confrontation Clause is aimed at protecting criminal defendants from those people making *accusations* against them." Michels v. Commonwealth, 47 Va. App. 461, 466, 624 S.E.2d 675, 678 (2006) (emphasis added) (citing Crawford, 541 U.S. at 43, 46). This "against

him" qualification narrows the class of out-of-court statements subject to the Confrontation Clause to those of an inherently testimonial nature — quite unlike typical "business records," Crawford, 541 U.S. at 56, or routine "official records" maintained by government officials, id. at 76 (Rehnquist, C.J., concurring).

We recently emphasized this point in Michels, holding that an official record from an out-of-state agency was not testimonial hearsay. We reasoned that Crawford, as many courts have held, did not extend the Sixth Amendment to "documents establishing the existence or absence of some objective fact, rather than detailing the criminal wrongdoing of the defendant," particularly affidavits used merely "to verify the chain of custody and authenticity of the underlying documentary evidence" or to certify the "results of laboratory tests" performed by scientific personnel. Michels, 47 Va. App. at 467, 624 S.E.2d at 678 (citations omitted). Such documents "do not resemble *ex parte* examinations, 'the principal evil at which the Confrontation Clause was directed.'" Id. at 469, 624 S.E.2d at 680 (quoting Crawford, 541 U.S. at 50).

Code § 19.2-187.01's inference serves merely to verify the chain of custody of the samples while being tested by DFS scientists. It codifies — in this limited context — the accepted maxim that, in the "absence of clear evidence to the contrary, courts may presume that public officers have properly discharged their official duties." Robertson v. Commonwealth, 12 Va. App. 854, 856-57, 406 S.E.2d 417, 418 (1991) (citation omitted).[4] As such, the chain-of-custody verification provides only foundation evidence that cannot be fairly characterized as

---

[4] See R. H. Stearns Co. v. United States, 291 U.S. 54, 64 (1934) (Cardozo, J.) ("Choice between two doubts should be made in such a way as to favor the presumption of official regularity."); Schell's Ex'rs v. Fauche, 138 U.S. 562, 565 (1891) ("With regard to the conduct of a public office the presumption is that everything is done properly and according to the ordinary course of business . . . ." (citation omitted)).

accusatorial. See Commonwealth v. Walther, 189 S.W.3d 570, 575 (Ky. 2006) (holding that foundation evidence does not "accuse" the defendant or fall within the Crawford definition of testimonial evidence); State v. Carter, 114 P.3d 1001, 1007 (Mont. 2005) (holding that "certification reports are nontestimonial in nature in that they are foundational, rather than substantive or accusatory").

Consistent with our reasoning in Michels, we hold the chain-of-custody inference supplied by Code § 19.2-187.01 constitutes nontestimonial evidence outside the protective "perimeter" of the Confrontation Clause. See Davis, 126 S. Ct. at 2274. We thus reject Anderson's Sixth Amendment challenge to the statutory chain-of-custody inference recognized by Code § 19.2-187.01 while the samples were being tested at the DFS laboratory.[5]

(ii)     *Remaining Chain-Of-Custody Evidence*

As for Anderson's challenge to the chain of custody of the samples while in the hands of the medical personnel assembling the PERK and the investigating officer relaying the samples to and from the DFS laboratory, we review that evidence in the "light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997).

---

[5] Anderson also suggests that the expert testimony of Karen Ambrozy, a DFS scientist, relied in part on preparatory work performed by a lab assistant, Kari Yoshida. This reliance, Anderson contends, violates Crawford because Yoshida did not appear at trial. Assuming without deciding this specific point was preserved for appeal under Rule 5A:18, we nonetheless find it unavailing. Crawford applies to testimonial hearsay *statements* by declarants who do not later appear at trial to expose their prior statements to the crucible of cross-examination. Davis, 126 S. Ct. at 2273. Crawford has no applicability to out-of-court *conduct* observed by, relied upon, or noted by a witness who does appear at trial and subjects his testimony to cross-examination. Compare Blackman v. Commonwealth, 45 Va. App. 633, 644, 613 S.E.2d 460, 464 (2005) (finding Crawford inapplicable when the declarant testifies at trial), with Rowley v. Commonwealth, 48 Va. App. 181, 184, 629 S.E.2d 188, 189 (2006) (distinguishing, for Fifth Amendment purposes, between "communications" and "conduct" (citation omitted)).

So viewed, the record amply supports a reasonable inference that the "evidence obtained by the police was the same evidence tested." Jeter v. Commonwealth, 44 Va. App. 733, 737, 607 S.E.2d 734, 735 (2005) (citation omitted). The emergency room physician testified that, with the help of a nurse, he collected vaginal swabs from Berry (from which the sperm fraction containing Anderson's DNA was later isolated) and placed them in a sealed envelope. The investigating officer's testimony then traced his steps as he retrieved the vaginal swab samples, transported them to and from the receiving clerks at DFS, and stored the samples in a secure property room during the interim.

Anderson complains about the absence of any testimony from the emergency room nurse or any law enforcement officer familiar with the storage protocols of the secure property room. A court need not hear, however, from every witness who physically handled the samples for the certificate to be admissible. Nor must the Commonwealth's evidence "exclude every conceivable possibility of substitution, alteration, or tampering." Pope v. Commonwealth, 234 Va. 114, 121, 360 S.E.2d 352, 357 (1987) (citation omitted). It need only provide "reasonable assurance" that the evidence obtained by the police was the same evidence tested. Vinson v. Commonwealth, 258 Va. 459, 469, 522 S.E.2d 170, 177 (1999) (citation omitted). And where "there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." Jeter, 44 Va. App. at 739, 607 S.E.2d at 737 (citation omitted); see also Brown v. Commonwealth, 21 Va. App. 552, 556, 466 S.E.2d 116, 117 (1996).

In short, Anderson's real complaint goes not to the chain-of-custody requirement for admissibility (determined by the trial judge as evidentiary gatekeeper), but to the debate over the weight of such evidence (determined by the jury as factfinder). Either way, we come to the same conclusion: A *prima facie* showing supported the trial judge's decision to admit the DNA

evidence, and the testimony at trial provided the jury with a sufficient factual basis for finding it persuasive.

### D. SUFFICIENCY OF EVIDENCE — ROBBERY CONVICTION

Virginia law defines robbery as stealing the personal property of another, from her person or in her presence, against her will "by violence or intimidation." Seaton v. Commonwealth, 42 Va. App. 739, 748, 595 S.E.2d 9, 13 (2004) (citations omitted). Relying on this definition, Anderson argues that no evidence proved he intimidated Berry into giving him her money. Anderson explains his position this way:

> Ms. Berry testified that when the perpetrator had finished the rape and sodomy he asked if she had any money. She then handed him her purse. The perpetrator asked her to remove the money from her purse and Ms. Berry complied. The perpetrator never yelled at Ms. Berry or touched her in any manner with regards to the taking of her money.

Appellant's Br. at 33. From there, Anderson argues that he could not be convicted of robbery because of the mere "temperamental timidity of the victim." Id.

In other words, Anderson ended his violent rape of Berry with a demand for her money, yet claims to be innocent of robbery because nothing he did *intimidated* her into complying with his demand. Under this theory, a thief who threatens to shoot a victim before taking her money commits robbery. But a thief who first shoots the victim and then asks for her money does not, apparently because the inherent intimidation of being asked for money by someone who has just shot you should be dismissed as a matter of mere timidity.

Suffice it to say, violence immediately preceding a demand for money has always been understood as sufficient to convert mere thievery into robbery. See generally 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(d), at 184 (2d ed. 2003) ("One may commit robbery by striking his victim with fist or weapon and then, having thus rendered the victim dead or

unconscious or dazed or unwilling to risk another blow, taking his property away from him.").

The jury in Anderson's case had ample reason to conclude that his rape and forcible sodomy of Berry intimidated her into submitting to his demand for money.

III.

Finding no merit in any of Anderson's arguments, we affirm his convictions for rape, forcible sodomy, and robbery.

<u>Affirmed.</u>