# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Aaron Perry

October 16, 2012

Case No. (Criminal) CR12-794-00-05

BY JUDGE MARY JANE HALL

This matter comes before the Court on Defendant's Motion to Dismiss the Charges based on alleged due process violations that have resulted from the Commonwealth's pre–indictment delay. For the reasons stated herein, the Court denies the motion.

## I. *Discussion and Findings*

Latron Griffin, Malcolm Bradley, and Muquan Scott were murdered on August 29, 2007. On March 7, 2012, a Norfolk Grand Jury returned indictments against Defendant, Aaron Perry, and he was arrested for those crimes thereafter. That lengthy period between the crimes and the indictment provides the basis for Defendant's motion to dismiss the charges for violations of his Constitutional right to due process.

Defendant contends that the Commonwealth improperly delayed in seeking the indictments. Norfolk police interrogated Defendant as a suspect on September 25, 2007. He provided alleged alibi witnesses during that interview and now argues that Norfolk police did not make adequate attempts to contact these witnesses and thus preserve important evidence that could have exonerated him. He complains of the decision by Norfolk investigators to suspend their investigation for three years while a related federal investigation was ongoing. Finally, Defendant alleges that investigators allowed audio recordings of his 2007 interview as well as 911 tapes from the night of the crime to be lost or destroyed. Defendant claims

that these actions by the Commonwealth were intentional or reckless and that actual prejudice to him has resulted, amounting to a violation of his Fifth Amendment Due Process rights.

A. *Only intentional delay by the Commonwealth in seeking an indictment in order to gain a tactical advantage can violate the Defendant's Due Process rights.*

The statute of limitations generally provides a defendant with the primary source of protection against improper delay in seeking indictment, but the Fifth Amendment's Due Process Clause also protects defendants from this kind of delay in very limited circumstances. While speedy trial guarantees are broad because a defendant often loses his liberty when charges are instituted, a defendant does not have a constitutional right to be arrested:

> The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*United States v. Marion*, 404 U.S. 307, 325, n. 18 (1971). Under the Due Process Clause, proof of prejudice is therefore necessary but not sufficient for dismissal of charges; the reasons for the delay must also be considered. *United States v. Lovasco*, 431 U.S. 783, 790 (1977). Moreover, "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *Id.*

Under Virginia case law, in order to "gain dismissal of criminal charges because of pre-arrest or pre-indictment delay," a defendant must establish that "(1) the prosecutor *intentionally delayed* indicting [the defendant] to gain a tactical advantage and (2) the defendant incurred actual prejudice as a result of the delay." *Morrisette v. Commonwealth*, 264 Va. 386, 393 (2002) (emphasis added). The defendant bears this burden of proof. *Id.*

In *Morrisette*, the leading case on pre-indictment delay, the defendant was charged with capital murder and rape based on a "cold hit" on DNA evidence collected at the crime scene nineteen years earlier. *Id.* at 391. The defendant claimed improper delay because police had not attempted to verify his alibi and had failed to test his DNA against samples from the scene just following the murder. *Id.* at 392. The Virginia Supreme Court ruled that

the defendant had not met the required burden because he failed to provide direct evidence that the Commonwealth had intentionally delayed indicting him to secure a tactical advantage. *Id.* at 393. The Court was not convinced that it could infer an improper motive from these failings by the police and instead found that the focus of the investigation had simply shifted to other suspects. *Id.*

Defendant invites this Court to rule that charges should be dismissed not just in the case of intentional delay but also if the delay was due to reckless disregard of the prejudicial impact of the passage of time on him. The Court of Appeals, however, has explicitly rejected this approach in *Anderson v. Commonwealth*, 48 Va. App. 704 (2007). In that case, the Court specifically declined to adopt a test that would include intentional delay *as well as* reckless disregard. *Id.* at 712. The Court of Appeals noted that, while the Fourth Circuit has added reckless disregard to the pre-indictment delay test, *see, e.g. Howell v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990), only two circuits use this test. *Anderson*, 48 Va. App. at 713, n. 3 (2007). That Court further held that it had no power to adopt the reckless disregard standard because only United States Supreme Court decisions can supersede clear precedent of the Virginia Supreme Court. *Id.* at 712-13, n. 2.

Defendant cites two U.S. Supreme Court cases for the proposition that reckless disregard must be included in the standard of review for pre-indictment delay. In the first, *United States v. Lovasco*, 431 U.S. 783 (1977), the Court held that reckless disregard for a defendant's case *might* be enough to violate a defendant's Due Process rights. *Id.* at 796, n. 17. The second case, *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,550) in U.S. Currency*, 461 U.S. 555 (1983), considered delay in regards to filing of a civil forfeiture, which the Court explicitly differentiated from pre-indictment delay in the criminal context. The Court found that government seizure of property was more akin to post-arrest delay where a defendant has lost his freedom. It analogized the civil forfeiture filing delay to a defendant's Sixth Amendment right to a speedy trial rather than the Fifth Amendment's Due Process Clause. *Id.* at 564. As such, *$8,850* contains no analysis of delay under the Fifth Amendment. No United States Supreme Court decision requires Virginia to include reckless disregard in its standard for evaluating pre-indictment delays under the Due Process Clause.

Virginia law, as enunciated in *Morrisette* and *Anderson*, requires Defendant to prove that any pre-indictment delay was the result of intentional acts by the Commonwealth to gain tactical advantage. If Defendant can prove this intentional delay, he must then prove actual prejudice as well. His motion to dismiss may not be granted unless both are proven.

B. *Defendant has not shown intentional delay by the Commonwealth for tactical advantage and has therefore failed to meet his burden.*

Defendant asserts that the Commonwealth intentionally and improperly delayed his indictment in three ways: (1) by not locating and interviewing alibi witnesses in 2007, (2) by halting the investigation in response to a federal investigation involving potential witnesses, and (3) by allowing evidence to be destroyed. The evidence presented did not establish that any of these three alleged deficiencies were caused by intentional delay by the prosecution for the purpose of prejudicing Defendant.

First, Defendant has not met his burden to show that the Commonwealth intentionally delayed indicting him by willfully failing to locate his alibi witnesses, Mike Young or the girlfriend of Mike Young. Defendant identified these two people in his initial interview with police in 2007. At the hearing on this motion, Sergeant Kelly, one of the two original lead detectives, responded to questions by defense counsel regarding his search for Mike Young. Sergeant Kelly testified that he had difficulty finding Mr. Young because there were several similar names in the database; additionally, he remembered going to the address provided by Defendant as well as the one listed in the D.M.V. database but not being able to locate anyone inside. (Tr. at 30.) He also obtained a search warrant for the phone number that Defendant provided for Mike Young. (Tr. at 29.) This information led to one of the addresses that Kelly had already checked, at which Mr. Young could not be found. (Tr. at 32.) Sergeant Kelly remembered going to the listed address for Mr. Young at least once and testified that he was "sure [he] went more than once." (Tr. at 33.) Mr. Young's girlfriend was even more difficult to reach as Defendant could only provide a first name, race, gender, and age. (Tr. at 33.) Without locating Mr. Young, Sergeant Kelly testified that he did not have enough information to find this girlfriend. (Tr. at 33.)

While Defendant can show that the detective's efforts to locate these alibi witnesses were perhaps less than perfect, he has not shown that investigators intentionally failed to locate them in order to hinder his ability to defend against the eventual charges. The evidence that comes the closest to suggesting an intentional delay comes from Sergeant Kelly's most recent interview of Defendant on March 7, 2012, when he told Defendant that he was going to "get [the alibi witnesses] on the record" because they will no longer remember where Defendant was in 2007. This statement shows at best that investigators acknowledged in 2012 the potential prejudice that the delay had caused Defendant, as it relates to the alibi witnesses, but it does not amount to an admission that the police intentionally skipped a timely interview of the witnesses in order to gain this advantage. This evidence thus falls short of the first prong of an improper pre-indictment delay.

Next, Defendant contends that the decision to halt the Norfolk investigation pending a federal investigation into the Bounty Hunter Bloods criminal street gang, one of whom is described as a material witness in the August 2007 triple homicide, reveals the intentional delay. Detective Malbon, Norfolk's lead homicide detective for the majority of the investigation, testified that the investigation was halted to "eliminate the possibility of bumping heads with the feds while they were investigating their thing." (Tr. at 77.) Further, Detective Malbon testified that he does not believe in "investigating a case just to make an arrest and then try to get the rest of the evidence after the arrest." (Tr. at 84.) He felt that he "needed some other person to confirm that [Defendant] was responsible for the murders." (Tr. at 87.) Detective Malbon further stated that he made attempts to speak with Joseafors Reid, who is now scheduled to testify for the Commonwealth, but that Mr. Reid did not volunteer to speak with Norfolk police until after he was indicted federally in 2011. (Tr. at 100.) As such, when Mr. Reid became available to the Commonwealth in 2011 following a federal investigation, Detective Malbon said that he believed he then had enough evidence to "confirm that [Defendant] was responsible for the murders." (Tr. at 87.) Defendant strongly attacks the rationale that Norfolk had to terminate an entire investigation for three years, with the attendant loss of important evidence during that timeframe, solely in order to talk to one witness. While one might question the basis for the decision to call a complete halt to the triple homicide investigation until a federal investigation concluded and potentially provided access to witness Joseafors Reid, the sole reason that has been provided does not support a conclusion that it was an intentional delay for the purpose of prejudicing Defendant.

Finally, Defendant contends that the Commonwealth has either lost or destroyed two audio recordings, both of which severely harm his ability to present a defense. Defendant persuasively argues the prejudice to him resulting from the loss, but he has not shown any intentional conduct by the Commonwealth that caused it. The testimony presented does not support a positive finding that Defendant's initial interview by police detectives even was recorded. Sergeant Kelly testified that, while he and Detective Malbon believed they were recording the interview while it occurred, he now has no reason to believe that a recording ever existed. (Tr. at 28.) He has never seen a video of the interview, and it was not uncommon for the system in place at the police department in 2007 to fail to record. (Tr. at 28.) Detective Malbon testified that he does not recall if a recording was ever created. (Tr. at 73.) Sergeant Jarvis, the officer tasked with searching for the recording, testified that he searched for the recording and could not locate one. (Tr. at 148.) He also stated that problems with the recording system in use at the time of the 2007 interview were not uncommon. (Tr. at 150.) In response to requests from Defendant, the Commonwealth indicated

by letter to this Court on October 3, 2012, that it had located a computer hard drive associated with the recording system and was requesting that the Department of Forensic Science analyze it for evidence of the original interview. Whether a recording has ever existed remains unknown, but, if it had, there has been no evidence presented from which this Court can conclude that the Commonwealth delayed indictment with the specific intention of losing any recording of the interview so as to prejudice Defendant.

Defendant also complains of the loss of the original recording of the 911 calls reporting the homicides on the night of August 29, 2007. Again, Defendant has the burden to prove that any loss of this evidence resulted from intentional acts by the Commonwealth to interfere with Defendant's ability to present his case. Sergeant Kelly testified that he personally obtained an audio recording of the 911 calls regarding this homicide in 2007. (Tr. at 50.) After transcribing these calls according to procedure, he then retained a copy of that recording in the case file. (Tr. at 50.) Unfortunately, the transcribed version of the audio includes many gaps and indications that the tape was "inaudible," compromising its utility and casting doubt on the integrity of the parts that were transcribed.

In 2009, Sergeant Kelly left the detective division, and, upon returning and inspecting the case file, he testified that he could not locate a copy of the recording in that file. (Tr. at 52.) He did not know when or how it was lost. It is impossible to speculate that it would have been with the file had the indictments issued more promptly but was lost because of the delay. Again, Defendant has not met his burden of proving that any delay relating to the loss of evidence was the result of action by the Commonwealth with the intent to prejudice Defendant.

Defendant bears the burden of proving intentional acts of bad faith on the part of the Commonwealth, and he has not met that burden in this case. The Court is satisfied that alibi witnesses who might have remembered their whereabouts shortly after a particular night would be unlikely to have as clear a memory five years later. Thus, although no positive showing has been made that witnesses did once remember matters that have since been forgotten, the Court would rule from this record that Defendant has been prejudiced by the delay. Nonetheless, the first prong of the test has not been proven.

If the Virginia Supreme Court determined that the standard for pre-indictment delay should include reckless disregard of appreciable risk to and probable prejudicial impact on Defendant's ability to defend against the charges, Defendant still would not have met that burden. Defendant contends that police should have been more diligent in locating Mike Young, but the testimony established that Detective Kelly did take several steps in attempting to locate him that essentially ended in a dead end. The evidence shows that a stronger reason leading to the delay was the three year halting

of the investigation in order to allow the federal investigation to proceed. In terms of this reason for the delay, Malbon's testimony indicated that Norfolk police halted the investigation at least partially because they were still building a case, certainly a goal that does not equate to improper delay. As to the possible recording of the 2007 interview, Defendant has failed to positively show that such a recording ever even existed, and, once there was reason to believe that it might, the Commonwealth quickly contacted the Norfolk Police Department to inquire. Finally, while the loss of 911 tapes is certainly troubling to the Court, Defendant has failed to prove that the delay caused this loss; such evidence does not typically go missing from a case file, and it does not follow that the police should have appreciated such a risk. In the case of each of these purported areas of prejudice resulting from the delay, Defendant has failed to prove that the Commonwealth appreciated the risk of a delay to Defendant and recklessly disregarded it.

Whether investigators pursued the case against Defendant as diligently or effectively as they could, or even should, is not controlling. The only relevant inquiry is whether the Commonwealth intentionally delayed indictment to gain a tactical advantage in harming Defendant's ability to defend against the charges. Because Defendant has not met his burden, he is not entitled to a dismissal of the charges.

## II. *Conclusion*

For these reasons, the Court denies Defendant's Motion to Dismiss. Pursuant to Rule 1:13, endorsements by counsel are waived. The Clerk is directed to send copies of this Order to counsel of record. Counsel are directed to submit written objections to this Order within twenty-one days. It is so ordered.