COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Decker and Russell
Argued at Chesapeake, Virginia

BENJAMIN JAMES MADONIA

v.      Record No. 1716-16-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE GLEN A. HUFF
OCTOBER 17, 2017

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James Clayton Lewis, Judge

Bassel Khalaf, Assistant Public Defender, for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Benjamin James Madonia ("appellant") appeals his conviction of rape, in violation of

Code § 18.2-61.  Following a jury trial in the Circuit Court of the City of Virginia Beach ("trial

court"), appellant was sentenced to life imprisonment.  On appeal, appellant argues that the trial

court erred in finding during a pretrial motion hearing that the Commonwealth established all

vital links in the chain of custody for DNA evidence, in allowing the Commonwealth to use

hearsay evidence to prove the chain of custody during that hearing, and in denying a voir dire

question requested by appellant.  For the reasons that follow, this Court affirms the trial court's

rulings.

## I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

The Offense

On the evening of May 28, 1987, a college student named D.D. met some of her friends at an oceanfront bar and dance club where they socialized until midnight or shortly thereafter. Although she had planned to walk home, she accepted when appellant offered to give her a ride. Rather than driving toward D.D.'s apartment, appellant pulled into a dark lot on a different street. A struggle ensued, during which appellant attacked and sexually assaulted D.D. Seizing an opportunity to escape, D.D. ran to some nearby apartments where a resident summoned police for her. Appellant fled the scene once D.D. escaped.

Chain of Custody

One of the responding police officers brought D.D. to Virginia Beach General Hospital, where Dr. Richard Craven ("Dr. Craven") and Hazel Hoban ("Hoban"), a registered nurse, collected forensic evidence from D.D.'s person and clothing.[1] This evidence, collected in 1987, eventually linked appellant to D.D.'s rape following its retesting in 2014 by Miriam Vanty ("Vanty") of the Virginia Department of Forensic Science. Appellant's challenge to the chain of custody for this forensic evidence is limited to the role played by Officer J.M. Stacy ("Stacy") during a period of less than two hours on the morning of May 29, 1987. Stacy was unable to testify as to his role in the chain of custody because he was deceased at the time of appellant's trial.

After collecting the evidence from D.D., Dr. Craven individually sealed each sample and placed them all inside a sealed container. Hoban testified that the examination concluded at

---

[1] Dr. Craven testified only at a pretrial motion *in limine* hearing, but by agreement of both parties, his testimony was admitted at trial.

- 2 -

3:30 a.m. on May 29 and that she kept the sealed kit in her possession until 4:00 a.m., when she personally handed it to Detective J.B. Spry ("Spry"). Spry testified that he received the sealed kit from Hoban at that time and then kept it in his possession until he placed it in a locked evidence refrigerator at police headquarters at 7:00 a.m. Following police protocol, Spry filled out an evidence voucher recording that he had placed the kit, which remained sealed, into the refrigerator. Spry also completed a request for laboratory analysis for the evidence contained in the kit. Stacy was responsible for transporting the kit to the laboratory.

Although Spry did not personally hand the sealed kit to Stacy, he identified Stacy's signature on several documents concerning the kit's transportation based on their years of working together. First, the property voucher form completed by Spry indicates that Stacy received the evidence on May 29, 1987. Second, the request for laboratory examination completed by Spry reflects that Stacy relinquished the sealed kit to Vanty on May 29, 1987. Third, the evidence log associated with the kit contains an entry recording that Stacy had signed out the kit on May 29, 1987, in order to deliver it to the laboratory. Although she no longer had personal recollection of that morning's events, after reviewing the request for laboratory examination form, Vanty testified that she personally received the sealed kit from Stacy at 8:39 a.m. on May 29, 1987, and she identified her signature on that form indicating she received the evidence on that date.

Vanty's 1987 testing of the physical evidence did not lead to identification of a suspect for D.D.'s rape. After years in storage, the same evidence kit returned to Vanty for retesting in 2014. Vanty testified that when she received the kit in 2014, it remained under the same seal she had placed on it after the 1987 analysis and that the contents of the kit appeared unchanged from that time.

Counsel for appellant contented in a pretrial hearing that the evidence adduced by the Commonwealth was insufficient to establish that Stacy had properly handled the evidence kit in 1987, and thus could not establish a vital link in the chain of custody. The trial court rejected this argument, concluding that no credible evidence existed to suggest that the evidence kit was improperly handled at any point after its initial collection and denied appellant's motion to exclude that evidence.

Voir Dire

Before the venire entered the courtroom for voir dire, counsel for appellant sought leave of court to ask potential jurors the following question:

> If there are two reasonable explanations that can be drawn from the evidence, one consistent with innocence, one consistent with guilt, you are bound by law to accept the explanation consistent with innocence and find the defendant not guilty. Do any of you feel that it would be difficult to apply this principle in a case before you?

The Commonwealth objected to this question, arguing that it was an incorrect statement of the law. Counsel for appellant argued that the question was necessary because rape cases evoke special sympathy from jurors who might vote to convict even in the face of a "reasonable alternative hypothesis of innocence." The trial court found that the question was an improper statement of law and excluded the question.

The trial court, however, was sympathetic to the concerns of appellant's counsel, observing that "I am of the view that the average citizen responds differently to a rape charge than other more—poor choice of words—run-of-the-mill criminal offenses." It allowed appellant's counsel to ask the venire a similar question:

> There is a presumption that [appellant] remains innocent unless the Commonwealth can prove his guilt beyond a reasonable doubt. Do any of you believe that it would be more difficult to apply that rule in a rape case than it would be in a case involving a less serious crime such as shoplifting?

Additionally, the trial court itself asked jurors the following question on a similar topic:

> Do you understand that in Virginia [appellant] is presumed to be innocent of all charges brought against him? Do you understand that in Virginia the Commonwealth must prove [appellant's] guilt beyond a reasonable doubt? Do you understand that [appellant] is not required to produce any evidence in this—in this state?

Following trial, the jury returned a guilty verdict and this appeal followed.

## II. STANDARD OF REVIEW

"The determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." Pope v. Commonwealth, 60 Va. App. 486, 511, 729 S.E.2d 751, 763 (2012) (citing Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994)). This Court likewise "review[s] a trial court's decision to exclude voir dire questions for an abuse of discretion." Thomas v. Commonwealth, 279 Va. 131, 162, 688 S.E.2d 220, 237 (2010) (citing Bassett v. Commonwealth, 222 Va. 844, 853, 284 S.E.2d 844, 850 (1981)). Under the deferential abuse of discretion standard, this Court will not overturn the trial court's decision merely because it disagrees with the trial court; instead, "only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." Campos v. Commonwealth, 67 Va. App. 690, 702, 800 S.E.2d 174, 180 (2017) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).

## III. ANALYSIS

On appeal, appellant challenges the trial court's pretrial rulings denying appellant's motion to exclude the DNA evidence and associated certificates of analysis and excluding the proposed voir dire question.

A.  Chain of Custody Evidence

Appellant first contends that the trial court erred in concluding that the Commonwealth established all vital links in the chain of custody for the DNA evidence because the only evidence establishing Stacy's role in the chain was his signature on the three documents associated with the evidence.  Appellant further argues that those signatures constituted impermissible hearsay.  This Court finds appellant's arguments unpersuasive.

When the Commonwealth seeks to introduce evidence that has been seized and analyzed, the chain-of-custody rule exists "to establish that the evidence obtained by the police was the same evidence tested."  Hargrove v. Commonwealth, 53 Va. App. 545, 553, 673 S.E.2d 896, 900 (2009) (quoting Brown v. Commonwealth, 21 Va. App. 552, 555, 466 S.E.2d 116, 117 (1996)).  The Commonwealth must present evidence proving each "vital link in the chain of custody," but it does not bear an absolute burden of demonstrating that "all possibility of tampering" has been eliminated.  Pope, 60 Va. App. at 511, 729 S.E.2d at 763 (quoting Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971)).

As such, "[a] court need not hear . . . from every witness who physically handled the samples for the [evidence] to be admissible."  Anderson v. Commonwealth, 48 Va. App. 704, 717, 634 S.E.2d 372, 378 (2006).  The Commonwealth "need only provide 'reasonable assurance' that the evidence obtained by the police was the same evidence tested."  Id. (quoting Vinson v. Commonwealth, 258 Va. 459, 469, 522 S.E.2d 170, 177 (1999)).  Thus, "where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence."  Jeter v. Commonwealth, 44 Va. App. 733, 739, 607 S.E.2d 734, 737 (2005) (quoting Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 651-52 (1990)).

The Commonwealth's chain-of-custody evidence addressed the state of the physical evidence at every stage in the investigation, beginning with the initial collection through the 2014 retesting that connected appellant to the crime. Dr. Craven and Hoban testified that they delivered the evidence to Spry. Spry testified that he personally locked the evidence in a police refrigerator and identified Stacy's signature as signing the evidence out for delivery to the forensics laboratory. Vanty testified that she personally received the evidence from Stacy after refreshing her recollection by reviewing Stacy's signature on the request for laboratory examination form. Appellant takes issue with the Commonwealth's reliance on Stacy's signatures on these forms, contending that they constituted impermissible hearsay without which the Commonwealth would be unable to prove Stacy's role in the chain of custody.

This Court, however, need not decide whether the signatures are hearsay because under the Virginia Rules of Evidence, trial courts are not required to adhere strictly to the rule against hearsay in pretrial motion hearings. Appellant's assignment of error with respect to the chain-of-custody evidence expressly limits his challenge to the trial court's evidentiary ruling at the pretrial motion *in limine* hearing. Virginia Rule of Evidence 2:1101(c) provides:

> Except as otherwise provided by statute or rule, adherence to the Rules of Evidence (other than with respect to privileges) is permissive, not mandatory, in the following situations:
> (1) Criminal proceedings other than (i) trial, (ii) preliminary hearings, (iii) sentencing proceedings before a jury, and (iv) capital murder sentencing hearings.

This rule indicates that in Virginia, less formal evidentiary standards govern criminal proceedings other than those enumerated in the rule, including the sort of pretrial hearing at issue here. Cf. Wolfe v. Commonwealth, 37 Va. App. 136, 142, 554 S.E.2d 695, 698 (2001) (holding that a trial court may rely on hearsay testimony during sentencing provided the information has "some indicia of reliability"). Implicit within the trial court's conclusion that it did not find "any credible evidence whatsoever" that the DNA evidence had not "been maintained with due

integrity since it was collected" is a finding that Stacy's signatures were sufficiently reliable to prove his role in the chain of custody. Accordingly, regardless of whether the signatures were hearsay, this Court concludes that the trial court did not abuse its discretion in relying on them.

In sum, the trial court, acting as evidentiary gatekeeper, determined that the Commonwealth met its burden of establishing all vital links in the chain of custody necessary to introduce the DNA evidence. Because appellant's challenge to Stacy's brief handling of the evidence raises mere speculation that contamination or tampering could have occurred, any such question went to the evidence's weight, not its admissibility. Jeter, 44 Va. App. at 739, 607 S.E.2d at 737. This Court therefore holds that the trial court did not abuse its discretion in denying appellant's motion to exclude the DNA evidence and associated certificates of analysis.

### B. Voir dire

Appellant next argues that the trial court abused its discretion by excluding a proposed voir dire question:

> If there are two reasonable explanations that can be drawn from the evidence, one consistent with innocence, one consistent with guilt, you are bound by law to accept the explanation consistent with innocence and find the defendant not guilty. Do any of you feel that it would be difficult to apply this principle in a case before you?

Because exclusion was appropriate, this Court affirms the trial court's ruling.

Voir dire questioning in Virginia is governed by Code § 8.01-358, which provides in part:

> The court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein and shall have the right to ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein[.]

This right to examine, however, is not boundless: a criminal defendant has "no absolute right to have the court ask every question he propounded." Bassett v. Commonwealth, 222 Va. 844, 853,

284 S.E.2d 844, 850 (1981). All the trial court must do is to "afford a party a 'full and fair' opportunity to ascertain whether prospective jurors 'stand indifferent in the cause,'" and "it is within the trial court's sound discretion to decide when a defendant has had such an opportunity." Thomas, 279 Va. at 162-63, 688 S.E.2d at 237-38 (quoting Buchanan v. Commonwealth, 238 Va. 389, 401, 384 S.E.2d 757, 764 (1989)). Where the defense had ample opportunity "to ask relevant questions and where the questions actually propounded by the trial court were sufficient to preserve a defendant's right to trial by a fair and impartial jury, we will generally not reverse a trial court's decision to limit or disallow certain questions from defense counsel." Id. at 163, 688 S.E.2d at 238 (quoting Buchanan, 238 Va. at 401, 384 S.E.2d at 764).

As counsel for appellant explained in argument following the question's exclusion, that question had two main purposes: to ascertain whether potential jurors (1) understood that the Commonwealth must exclude every reasonable hypothesis of innocence, and (2) would be biased against appellant because he was on trial for rape as opposed to a less provocative offense. These concerns were amply addressed by other questions asked of the venire.

As to the question's burden-of-proof component, a "statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003). The trial court fully addressed this concern when it asked jurors:

> Do you understand that in Virginia [appellant] is presumed to be innocent of all charges brought against him? Do you understand that in Virginia the Commonwealth must prove [appellant's] guilt beyond a reasonable doubt? Do you understand that [appellant] is not required to produce any evidence in this—in this state?

As to appellant's concern that jurors may be biased against appellant because of the crime's nature, the trial court permitted appellant to ask a different question addressing that possibility:

> There is a presumption that [appellant] remains innocent unless the Commonwealth can prove his guilt beyond a reasonable doubt. Do any of you believe that it would be more difficult to apply that rule in a rape case than it would be in a case involving a less serious crime such as shoplifting?

Because these other questions cover the same ground as the excluded question, this Court holds that the trial court did not abuse its discretion in refusing appellant's voir dire question.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms appellant's conviction.

<u>Affirmed.</u>