COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, Fulton and Lorish
Argued by videoconference


DONNIE ERIC STEPHEN JOHNSON

MEMORANDUM OPINION[*] BY
v.        Record No. 0909-22-4        JUDGE JUNIUS P. FULTON, III
NOVEMBER 21, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Alexander R. Iden, Judge

D. Eric Wiseley (Struckmann, White & Wiseley PC, on briefs), for
appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Donnie Eric Stephen Johnson of possession with intent to distribute

Eutylone, a Schedule I controlled substance, possessing a firearm while attempting to possess with

intent to distribute Eutylone, a Schedule I controlled substance, misdemeanor reckless handling of a

firearm, shooting in the commission of a felony, and unlawfully shooting into an occupied dwelling,

in violation of Code §§ 18.2-248(C), 18.2-308.4(C), 18.2-56.1(A), 18.2-53, and 18.2-279,

respectively.[1] Johnson argues that the trial court erred in admitting the certificate of analysis

identifying the drugs because the Commonwealth did not establish the requisite chain of custody.

Johnson also argues that the evidence was insufficient to sustain his convictions. Finding no error,

we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The trial court dismissed a related charge of manufacturing marijuana, and the jury
acquitted Johnson of two counts of malicious wounding and two counts of using a firearm while
attempting to commit malicious wounding.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On June 29, 2020, sixteen-year-old C.P. and his friend, Danny Simmons, conspired to rob Johnson during a drug transaction. Simmons contacted Johnson and agreed to purchase the drug "Molly" at Johnson's residence. Johnson lived next to Livingston Smith on a narrow street in a "trailer park subdivision." Around 11:15 p.m., Simmons drove C.P. and two women to Johnson's residence and parked in front of Smith's trailer. Unarmed, C.P. and Simmons exited the car and waited for Johnson. About ten minutes later, Johnson exited his trailer and approached Simmons. C.P. stood by the driver's side door while Simmons and Johnson spoke to each other beside the trunk.

About three minutes later, C.P. heard Johnson scream and saw Simmons "sucker punch" him. Johnson fell, and Simmons continued punching him, ignoring Johnson's pleas to "stop." During the struggle, C.P. heard a gunshot and saw Johnson holding a black pistol. As C.P. hurriedly entered the car, he heard another gunshot and felt a bullet strike his leg. Simmons "smacked" the gun out of Johnson's hand and ran down the street. C.P. and the two women drove toward Simmons, picked him up, and drove away.

Smith's wife heard the gunshots and told him that "[s]omebody shot the [front] door." When Smith opened the door, Johnson ran onto his porch and said, "They shot me. They shot

me." Smith told Johnson that he could not assist him. Johnson returned to his trailer and told his girlfriend to call police.

Soon thereafter, Frederick County Sheriff's Deputy Blake Armstrong arrived at Johnson's residence in response to the reported shooting. Deputy Armstrong noticed a gun magazine in the street near Johnson's trailer. He entered the trailer and saw Johnson lying on the floor beside a couch, bleeding from his face and a gunshot wound in his right knee. Deputy Armstrong applied a tourniquet to the gunshot wound and directed another deputy to retrieve the gun magazine. Admitting that the magazine was his, Johnson said that he fired a gun during the incident and hid it underneath the couch.

Police found a black handgun and a plastic baggie containing suspected marijuana underneath the couch. Police also found two cartridge casings in the street. The casings matched the brand and caliber of those found inside Johnson's gun magazine. Deputy Armstrong also saw "what appeared to be bullet damage" on the front door of Smith's trailer.

Deputy Nicholas Dempsey interviewed Johnson at the hospital later that night. Johnson said that he had agreed to sell Simmons "Molly" and met him outside Smith's trailer to do so. Johnson said that Simmons and "another guy" attacked him when he approached them. Johnson claimed that he heard a gun "cock," so he drew his pistol and warned his attackers that he would shoot them. Johnson then aimed at their legs and fired his gun three times. Denying that he accidentally shot himself, Johnson maintained that he was disarmed and shot with his own gun.

During the interview, a nurse handed Deputy Dempsey two clear plastic baggies containing suspected narcotics and said that she found them in Johnson's right sock.[2] Deputy Dempsey showed the baggies to Johnson. Johnson said that the bags contained "Molly and

_____

[2] At trial, Johnson did not object to Deputy Dempsey's testimony that although he did not see the nurse remove the drugs from Johnson's sock, the nurse told him that she did so.

- 3 -

MDMA" that he "was going to sell" to Simmons. Johnson also admitted that he "had a little baggie" of marijuana that was either in his pocket or "underneath the couch with [his] gun." Johnson denied having "any other drugs on [him] aside from the two bags of Molly and a little bit of weed."

Deputy Dempsey placed the two baggies containing the suspected controlled substances in a sealed package and gave it to Deputy Armstrong. Deputy Armstrong then removed the baggies and placed them into another "evidence container," which he labeled and deposited into a secure evidence locker at the sheriff's office. Deputy Megan Hicks later retrieved the labeled container from the evidence locker and transported it to the Virginia Department of Forensic Science. Forensic testing established that the two plastic baggies contained Eutylone, a Schedule I controlled substance.

At trial, Johnson objected to the admission of the certificate of analysis identifying the drugs as Eutylone, arguing that the Commonwealth failed to establish a "vital link of the chain of the evidence" because Deputy Dempsey "didn't see where [the nurse] found" the drugs that were tested. In addition, Johnson argued that the admission of the certificate of analysis violated his right to confront witnesses because the nurse who found the drugs did not testify.

The Commonwealth countered that it had proven the chain of custody because Johnson confessed that he possessed the two plastic baggies containing the controlled substances that were ultimately tested. The trial court found that Deputy Dempsey was "physically present" when the nurse found the drugs, which Johnson identified as "MDMA" and said were his. Accordingly, the trial court admitted the certificate of analysis.

At the conclusion of the Commonwealth's evidence, Johnson moved to strike all of the charges except for shooting in the commission of a felony. The trial court denied the motion in

- 4 -

relevant part.[3] The Commonwealth later, without objection, amended the indictment for felony reckless handling of a firearm causing serious bodily injury to misdemeanor reckless handling of a firearm. The jury then convicted Johnson of possession with intent to distribute Eutylone, possessing a firearm while attempting to commit possession with intent to distribute Eutylone, misdemeanor reckless handling of a firearm, shooting during the commission of a felony, and unlawfully shooting into an occupied dwelling.

Johnson moved to set aside the verdicts based on his previous arguments made during trial.[4] The trial court denied the motion, and Johnson appealed.

ANALYSIS

I. Admissibility of the Certificate of Analysis

"The determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012). "[O]nly in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Johnson contends that the trial court erred in admitting the certificate of analysis at trial because the Commonwealth did not prove that the drugs Deputy Dempsey received and submitted for testing were the same drugs that were tested. Specifically, Johnson asserts that (1) Deputy Dempsey did not see the nurse retrieve the suspected drugs from Johnson's sock, and (2) the nurse's statement that she did so was inadmissible testimonial hearsay under the

---

[3] The court granted Johnson's motion to strike as to the manufacturing marijuana charge.

[4] Johnson did not argue that the evidence was insufficient to sustain his conviction for shooting in the commission of a felony.

Confrontation Clause. Johnson argues, therefore, that "there is no cognizable evidence" establishing all vital links in the chain of custody of the drugs. We disagree.

"[T]he purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." *Hargrove v. Commonwealth*, 53 Va. App. 545, 553 (2009) (quoting *Brown v. Commonwealth*, 21 Va. App. 552, 555 (1996)). "In proving the chain of custody, '[t]he Commonwealth must . . . account for every vital link in the chain of possession.'" *Id.* at 554 (alterations in original) (quoting *Alvarez v. Commonwealth*, 24 Va. App. 768, 777 (1997)). But "[a] court need not hear . . . from every witness who physically handled the samples for the [evidence] to be admissible." *Anderson v. Commonwealth*, 48 Va. App. 704, 717 (2006). Rather, the Commonwealth "need only provide 'reasonable assurance' that the evidence obtained by the police was the same evidence tested." *Id.* (quoting *Vinson v. Commonwealth*, 258 Va. 459, 469 (1999)). "[W]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." *Jeter v. Commonwealth*, 44 Va. App. 733, 739 (2005) (quoting *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990)).

In this case, the Commonwealth proved "every 'vital link in the chain of possession.'" *Hargrove*, 53 Va. App. at 554 (quoting *Alvarez*, 24 Va. App. at 777). The unchallenged evidence established that although Deputy Dempsey did not see the nurse remove the suspected narcotics from Johnson's sock, he was permitted to testify, *without objection*, to the nurse's statement about where she located the drugs.[5] When shown the suspected narcotics, Johnson

---

[5] Because Johnson failed to object to the admissibility of the nurse's statement at the time Deputy Dempsey testified about it, he has not preserved his objection that admission of the statement violates his Confrontation Clause rights. *See* Rule 5A:18 (requiring objections be timely made and stated with reasonable certainty); *Perry v. Commonwealth*, 58 Va. App. 655, 673 (2011) ("Rule 5A:18 applies to bar even constitutional claims."). "Although Rule 5A:18

immediately identified them as "MDMA" which he intended to sell to Simmons. Indeed, Johnson admitted that he did not have "any other drugs *on [him]* aside from the two bags of Molly and a little bit of weed." (Emphasis added). Deputy Dempsey then placed the two baggies in a sealed package and gave it to Deputy Armstrong, who secured the evidence in a locker at the sheriff's office. Deputy Hicks later retrieved the container from the evidence locker and transported it to the Department of Forensic Science, where forensic testing established that the two plastic baggies contained Eutylone. Thus, the above evidence "provide[d] 'reasonable assurance' that the evidence obtained by the police was the same evidence tested." *Anderson*, 48 Va. App. at 717 (quoting *Vinson*, 258 Va. at 469). Accordingly, the trial court did not abuse its discretion in admitting the certificate of analysis.

## II. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the

---

contains exceptions for good cause or to meet the ends of justice, [Johnson] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

- 7 -

trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### A. Possession with Intent to Distribute Eutylone

Johnson argues that the evidence was insufficient to sustain his conviction for possession with intent to distribute Eutylone because Deputy Dempsey "never saw the contraband in [Johnson's] actual possession" and Johnson misidentified the drugs as "MDMA." Johnson's arguments are unpersuasive.

"[T]o convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused [intentionally and] consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020) (citing *Jones v. Commonwealth*, 17 Va. App. 572, 574 (1994)). The Commonwealth need not prove that the accused knew the "precise identity" of the specific controlled substance in his possession, only that the substance was a "controlled substance." *Sierra v. Commonwealth*, 59 Va. App. 770, 783-84 (2012). "Such knowledge may be shown by evidence of the acts, statements or conduct of the accused" and "[o]ther circumstantial evidence." *Young v. Commonwealth*, 275 Va. 587, 591 (2008).

Here, as stated above, Johnson admitted that he possessed and intended to sell the drugs Deputy Dempsey showed him at the hospital, which he identified as MDMA. *See Prince v. Commonwealth*, 228 Va. 610, 613 (1985) ("An admission deliberately made, precisely identified and clearly proved affords evidence of a most satisfactory nature and may furnish the strongest and most convincing evidence of truth."). "3,4-methylenedioxymethamphetamine (MDMA)" is a Schedule I controlled substance. Code § 54.1-3446. Thus, the evidence established that Johnson knowingly and intentionally possessed a Schedule I controlled substance. That Johnson

mistakenly believed that the controlled substance he possessed was MDMA rather than Eutylone is "no[ ] defense." *Sierra*, 59 Va. App. at 783-84.

### B. Possessing a Firearm While Possessing Eutylone with Intent to Distribute

Johnson argues that the evidence failed to prove that he possessed a firearm while possessing Eutylone with intent to distribute it because "there was no testimony or evidence that put either item in [his] possession at the same time." Alternatively, Johnson cites to this Court's opinion in *Wright v. Commonwealth*, 53 Va. App. 266, 282 (2009), for the proposition that Code § 18.2-308.4(C) "requires proof of a nexus between the drug offense and the firearm possession—proof that possession of the firearm somehow furthers, advances, or helps the defendant to commit the offense of possessing a controlled substance with an intent to distribute it." He argues that his "possession of a firearm was incidental to the intent to distribute" and his "surprise beating intervened between the predicate possession with intent and the firearm display; eviscerating the nexus between the acts."

Code § 18.2-308.4(C) "prohibits the simultaneous possession of a firearm while in possession of a controlled substance with the intent to distribute it." *Hunter v. Commonwealth*, 56 Va. App. 50, 57 (2010). Contrary to Johnson's assertion on brief, Code § 18.2-308.4(C) does not require "proof of a nexus between the firearm and the drugs that the defendant actually or constructively possesses." *Wright v. Commonwealth*, 278 Va. 754, 760-61 (2009). Rather, as relevant here, the Commonwealth had to prove only that Johnson possessed a firearm "while committing or attempting to commit the illegal manufacture, sale, distribution, or the possession with the intent to manufacture, sell, or distribute" a Schedule I or II controlled substance. Code § 18.2-308.4(C).

The record demonstrates that Johnson admitted to police that he repeatedly fired his gun at Simmons and C.P. while attempting to sell them MDMA, which he later identified at the

hospital and subsequent testing established was in fact Eutylone, a Schedule I controlled substance. That evidence supports the trial court's finding that Johnson simultaneously possessed a firearm while possessing Eutylone with intent to distribute it. *See Wright*, 278 Va. at 760-61 (holding evidence was sufficient to convict defendant under Code § 18.2-308.4(C) despite lack of any "nexus" between the gun and drugs possessed).

### C. Reckless Handling of a Firearm

Johnson's fourth assignment of error states that "[t]he trial court erred when it found evidence sufficient for Reckless Handling of Firearm causing serious injury, in violation of [Code] § 18.2-56.1." Because the record does not support the factual basis for this assignment of error, we will not consider it as it does not comply with Rule 5A:20(c)(2).

"An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court or other tribunal from which an appeal is taken . . . is not sufficient." Rule 5A:20(c)(2). "If the assignments of error are insufficient, the appeal will be dismissed." *Id.* Code § 18.2-56.1(A1) provides:

> Any person who handles any firearm in a manner so gross, wanton, and culpable as to show a reckless disregard for human life and *causes the serious bodily injury* of another person resulting in permanent and significant physical impairment *is guilty of a Class 6 felony.*

(Emphasis added). By contrast, Code § 18.2-56.1(A) states:

> It shall be unlawful for any person to handle recklessly any firearm *so as to endanger the life, limb or property of any person.* Any person violating this section shall be guilty of a *Class 1 misdemeanor*.

(Emphasis added).

The record here demonstrates that Johnson was originally charged with felony reckless handling of a firearm causing serious bodily injury, under Code § 18.2-56.1(A1). However, at trial, the Commonwealth amended the charge, without objection, to misdemeanor reckless

- 10 -

handing of a firearm, which does not require proof of serious bodily injury. *See* Code § 18.2-56.1(A). The jury then convicted Johnson of the misdemeanor offense. Thus, although Johnson asserts that "[t]he trial court erred when it found evidence sufficient for Reckless Handling of Firearm causing serious injury," the trial court made no such finding. Consequently, Johnson's fourth assignment of error "is not sufficient" because it "does not address the findings, rulings, or failures to rule on issues in the trial court." Rule 5A:20(c)(2). Accordingly, we do not address Johnson's arguments. *See Jay v. Commonwealth*, 275 Va. 510, 520 (2008) (detailing actions the Court may take when a brief fails to meet the requirements of 5A:20).

### D. Unlawfully Shooting into an Occupied Dwelling

Johnson asserts that the evidence was insufficient to prove that he unlawfully discharged a firearm into an occupied dwelling because no evidence established that he specifically "intended to shoot at or toward" Smith's residence. Johnson's argument is meritless.

"[T]o sustain a conviction under Code § 18.2-279, the Commonwealth need not prove that the defendant had the specific intent to shoot at or against a particular building." *Ellis v. Commonwealth*, 281 Va. 499, 506 (2011). "Rather, the evidence need only show that a defendant who unlawfully discharges a firearm knew or should have known that an occupied building or buildings were in his line of fire." *Id.*

It is well-established that a fact finder may "infer that every person intends the natural, probable consequences of his or her [voluntary] actions." *Id.* at 507. Thus, this Court has held that the evidence was sufficient to prove a defendant violated Code § 18.2-279 where he repeatedly fired his gun at "a truck located directly in front of an occupied residence from a distance of sixty feet," even though the defendant stated that the home was not his intended target. *Fleming v. Commonwealth*, 13 Va. App. 349, 355 (1991). We have also found evidence sufficient to convict under Code § 18.2-279 where the defendant shot at a man in front of a

- 11 -

convenience store and the jury "could reasonably have inferred" that the defendant was "familiar with the neighborhood" and "would have known" that the store was "occupied by employees." *Ellis*, 281 Va. at 507.

The record here supports the trial court's finding that Johnson "knew or should [have] known" that Smith's house was occupied and "in his line of fire." *Id.* The evidence established that Johnson chose to arm himself and transact a drug deal directly in front of Smith's trailer. When Simmons attacked him in front of Smith's trailer, Johnson deliberately aimed and repeatedly fired his gun at Simmons. The shooting occurred late at night on a narrow street in Johnson's neighborhood. Considering that evidence, the jury could infer that although Johnson may not have specifically intended to shoot Smith's trailer, he was "familiar with the neighborhood" and should have known that the home was in his "line of fire." *Id.* Moreover, as the incident happened late at night when people are typically sleeping, it was reasonable for the jury to conclude that Johnson knew or should have known that Smith's home was occupied. Indeed, that Johnson ran to Smith's house for assistance underscores this point. Thus, the trial court did not err in declining to overturn the jury's finding that the evidence was sufficient to prove that Johnson unlawfully discharged a firearm into an occupied dwelling. *Cf. id.*

E. Shooting in the Commission of a Felony

Johnson contends that the evidence was insufficient to prove that he violated Code § 18.2-53 because he did not shoot his gun while committing a crime. He asserts that Code § 18.2-53 requires proof that he shot a firearm "while committing and in order to accomplish another felony." According to Johnson, the shooting was "discrete from the distribution, separated by an intervening superseding cause of an unlawful beating."

Because he did not argue the insufficiency of the evidence to convict him of shooting in the commission of a felony in either his motion to strike or his motion to set aside the verdict,

Johnson did not preserve his arguments for appellate review. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Accordingly, "this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). Moreover, appellate courts "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.*

> In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own.

*Commonwealth v. Bass*, 292 Va. 19, 33 (2016).

Here, Johnson did not preserve his sufficiency argument in the trial court because he did not argue that the evidence was insufficient to prove that he violated Code § 18.2-53, either in his motion to strike or motion to set aside the verdict. Consequently, his arguments are waived.

- 13 -

*Id.* Although there are exceptions to Rule 5A:18, Johnson does not invoke them in his opening brief, and we will not do so sua sponte. *Edwards*, 41 Va. App. at 761.

## CONCLUSION

For the above reasons, we affirm the trial court's judgment.

*Affirmed.*